Theodore W. Chandler (Bar No. 219456)
   ted.chandler@bakerbotts.com
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:   (213) 202-5702
Facsimile:   (213) 202-5732

[*Additional Counsel on Signature Page*]

*Attorneys for Plaintiff Shenzhen Smoore
Technology Co. Ltd.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHENZHEN SMOORE TECHNOLOGY CO. LTD., <br><br>      *Plaintiff*, <br><br> v. <br><br> NEXT LEVEL VENTURES, LLC and ADVANCED VAPOR DEVICES LLC, <br><br>      *Defendants*. | Case No.: 2:22-cv-07646-AB-AGR <br><br> **COUNTERCLAIM-DEFENDANT'S NOTICE OF MOTION TO DISMISS COUNTERCLAIM-PLAINTIFF'S COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES OR, IN THE ALTERNATIVE, TO BIFURCATE AND STAY ANTITRUST COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:    Oct. 11, 2024[1] <br> Time:   10 a.m. <br>         Courtroom 7B <br> Judge:  Hon. André Birotte Jr. <br><br> Complaint Filed: 10/19/2022 |

---

[1] The parties are discussing rescheduling of both the hearing on this motion and the scheduling conference following the parties' Rule 26(f) Report for November 1, 2024, but an agreement has not yet been finalized.

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that at the above time and place, Counterclaim-Defendant Shenzhen Smoore Technology Co. Ltd. ("Smoore") will and hereby does move this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counterclaim-Plaintiff Next Level Ventures, LLC's ("NLV") counterclaims for failure to state a claim upon which relief can be granted, strike NLV's and Defendant A&A Global Imports, Inc.'s ("A&A") affirmative defenses, or in the alternative, to bifurcate and stay discovery regarding NLV's antitrust counterclaims. Counterclaim-Defendant's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Proposed Order, and reply brief filed, and any arguments presented at the hearing.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on August 22 and September 5, 2024.

Dated: September 13, 2024        Baker Botts L.L.P.


By: /s/  *Theodore W. Chandler*
Theodore W. Chandler (Bar No. 219456)
  ted.chandler@bakerbotts.com
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:    (213) 202-5702
Facsimile:    (213) 202-5732

Robert L. Maier (*Pro Hac Vice*)
  robert.maier@bakerbotts.com
Kiyotoki Natsume (*Pro Hac Vice*)
  thomas.natsume@bakerbotts.com
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone:    (213) 202-5702
Facsimile:    (213) 202-5732

Chao "Wendy" Wang (Bar. No. 289325)
  wendy.wang@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Rd, Bldg. One, Ste 200
Palo Alto, California 94303
Telephone:    (650) 739-7514

i

Facsimile:      (650) 739-7614

Erik T. Koons (*Pro Hac Vice*)
   erik.koons@bakerbotts.com
Evan J. Werbel (*Pro Hac Vice Forthcoming*)
   evan.werbel@bakerbotts.com
Thomas E. Carter (*Pro Hac Vice Forthcoming*)
   tom.carter@bakerbotts.com
Kristin M. Barkemeyer (*Pro Hac Vice Forthcoming*)
   kristin.barkemeyer@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Telephone:      (202) 639-7700
Facsimile:      (202) 639-7890

*Attorneys for Plaintiff Shenzhen Smoore Technology Co. Ltd.*

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  LEGAL STANDARD FOR DISMISSAL UNDER RULE 12(b)(6) .......... 2

III. NLV'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE
     TO STATE A CLAIM ............................................................................... 3

     A.   NLV Fails to Allege a Relevant Market in Which Smoore Actually
          Competes, as Required for All of Its Antitrust Claims .......................... 3

     B.   NLV's Allegations of Anticompetitive Contracts Between Smoore and
          Its Distributors Fail to State a Claim .................................................... 4

          1.   NLV Cannot Show Antitrust Injury from Its Allegations that
               Smoore Conspired to Inflate Prices ............................................. 5

          2.   NLV's Alleged Injuries from Smoore's Distribution Contracts
               Are Conclusory, Implausible, and Trivial. .................................. 6

          3.   NLV Fails to Allege the "Substantial Foreclosure" Required for
               Exclusive Dealing Claims Under the Sherman Act. ...................... 7

               a.   NLV's Allegations Fail to Plausibly Show That It Was
                    Foreclosed from a "Substantial" Portion of Any Market ... 7

               b.   NLV's Allegations Ignore Self-Distribution Realities ....... 9

     C.   NLV's Claims that Smoore's Enforcement of its Patents is
          Anticompetitive Are Barred by *Noerr-Pennington* Immunity. ........... 10

          1.   NLV Fails to State a Claim that Smoore's Patent Claims
               Constitute "Sham Litigation" ...................................................... 12

               a.   NLV Does Not Plausibly Allege that Smoore's U.S. Patent
                    Enforcement Efforts Are Objectively Meritless ............... 12

               b.   NLV's Allegations Regarding Smoore's Enforcement
                    Efforts in China Fail to State a Claim .............................. 13

          2.   NLV's Allegations of Intentional "Misrepresentations" and
               "Knowingly Fraudulent" Statements Cannot Defeat *Noerr-
               Pennington* Immunity. ................................................................ 15

          3.   NLV Cannot Demonstrate a "Policy" or "Pattern" of Allegedly
               Baseless Suits. ............................................................................. 16

     D.   NLV Fails to Plausibly Allege a "Dangerous Probability" of
          Monopolization .................................................................................... 17

     E.   NLV's California Cartwright Act Claim Fails for the Same Reasons as
          its Sherman Act Claims ....................................................................... 18

     F.   NLV's Patent Counterclaim Should Be Dismissed. ............................ 19

IV.  NLV's AND A&A's AFFIRMATIVE DEFENSES SHOULD BE
     STRICKEN ............................................................................................. 20

V.   IN THE ALTERNATIVE, SHOULD THE COURT NOT DISMISS ALL
     ANTITRUST COUNTERCLAIMS, THE COURT SHOULD
     BIFURCATE AND STAY THE ANTITRUST COUNTERCLAIMS
     PENDING RESOLUTION OF THE PATENT CLAIMS ...................... 21

     A.   Legal Standard for Bifurcation and Stay .............................................. 21

i

B.    Bifurcation of the Antitrust Counterclaims is Warranted....................22

C.    A Stay of the Antitrust Counterclaims is also Warranted...................24

VI.    **CONCLUSION** ................................................................25

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE
DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

CASES

5

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
6    141 F.3d 947 (9th Cir. 1998) ................................................................. 6

7

*Applied Med. Res. Corp. v. Ethicon, Inc.*,
8    No. SA-CV-031329-JVS-MLGx, 2006 WL 1381697 (C.D. Cal. Feb. 3, 2006) . 7

9

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
10    876 F.3d 1350 (Fed. Cir. 2017) .......................................................... 20

11

*Ashcroft v. Iqbal*,
12    556 U.S. 662 (2009) ................................................................. 3, 20

13

*Atl. Richfield Co. v. USA Petrol. Co.*,
    495 U.S. 328 (1990) ......................................................................... 5

14

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
15    2009 WL 8727693 (C.D. Cal. Feb. 17, 2009) .................................. 11, 15, 16

16

*Baldwin Hardware Corp. v. Franksu Enter. Corp.*,
17    No. CV-90-4919-WDK, 1990 WL 357312 (C.D. Cal. Dec. 28, 1990) ............ 23

18

*Barnes v. JFK Mem'l Hosp., Inc.*,
19    No. EDCV17681JGBSPX, 2017 WL 7240813 (C.D. Cal. Aug. 28, 2017)......... 9

20

*Bell Atl. Corp. v. Twombly*,
21    550 U.S. 544 (2007) ....................................................... 2, 12, 20, 25

22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
23    429 U.S. 477 (1977) ......................................................................... 5

24

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
25    157 F.3d 1340 (Fed. Cir. 1998) ......................................................... 10

*Cellular Plus, Inc. v. Super. Ct.*,
26    14 Cal. App. 4th 1224 (1993) ........................................................... 19

27

28

i

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
   No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006)...................24, 25

*Choker v. Pet Emergency Clinic, P.S.*,
   No. 22-35650, 2023 WL 8888632 (9th Cir. Dec. 26, 2023) ................................6

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)........................................................................................19

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013)................................................................25

*Dairy, LLC v. Milk Moovement, Inc.*,
   No. 2:21-cv-02233 WBS AC, 2022 WL 4387981 (E.D. Cal. Sept. 22, 2022) ..10

*Eastman v. Quest Diagnostics Inc.*,
   724 F. App'x 556 (9th Cir. 2018)...................................................................8, 10

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
   556 F. Supp. 3d 1156 (D. Or. 2021)....................................................21, 22, 23

*Figueroa v. Marshalls of CA, LLC*,
   No. CV11-06813-RGK, 2012 WL 1424400 (C.D. Cal. Apr. 23, 2012)............20

*Fitbit, Inc. v. Aliphcom*,
   No. 5:15-CV-04073-EJD, 2016 WL 7888033
   (N.D. Cal. May 27, 2016).......................................................................21, 23, 24

*FLAA v. Hollywood Foreign Press Ass'n*,
   55 F.4th 680 (9th Cir. 2022)..................................................................................9

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) .................................................................................3

*FutureLogic, Inc. v. TransAct Techs., Inc.*,
   No. CV 05-03754 MMM, 2007 WL 9700696 (C.D. Cal. Oct. 30, 2007)..........11

*GT Beverage Co. v. Coca Cola Co.*,
   No. SACV 10-00209-JVS, 2010 WL 11595832
   (C.D. Cal. Aug. 2, 2010) .....................................................................................14

*Hydranautics v. Filmtec Corp.*,
   70 F.3d 533 (9th Cir. 1995).................................................................................23

ii

*Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*,
   146 F. Supp. 3d 1217 (S.D. Cal. 2015) ................................................. 3

*In re Innotrol Diagnostics*,
   800 F.3d 1077 (Fed. Cir. 1986) ........................................................... 21

*Kottle v. Nw. Kidney Ctrs.*,
   146 F.3d 1036 (9th Cir. 1998) ..................................................... 11, 17

*Loctite Corp. v. Ultraseal Ltd.*,
   781 F.2d 861 (Fed. Cir. 1985) ........................................................... 10

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
   No. 09-80, 2010 WL 925864 (D. Del. March 11, 2010).................... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................ 5

*MedImmune, Inc. v. Genentech, Inc.*,
   No. CV 03-2567 MRP, 2003 WL 25550611 (C.D. Cal. Dec. 23, 2003) ..... 15, 16

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) ............................................. 13

*Michael Kors, L.L.C. v. Chunma USA, Inc.*,
   No. CV 16-01271-AB (AFM), 2017 WL 5665003
   (C.D. Cal. Aug. 30, 2017) ............................................................ 21, 24

*Morning Star Packing Co. v. SK Foods, L.P.*,
   No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459 (E.D. Cal. June 14, 2017) ... 5

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ............................................................. 4

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) ......................................................... 11

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018) ............................................................................ 3

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ......................................................... 7, 9

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE
DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

*Omni Res. Dev. Corp. v. Conoco, Inc.*,
    739 F.2d 1412 (9th Cir. 1984) ........................................................................... 15

*Or. Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ....................................................................... 13, 16

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ..................................................................................... 10, 14

*Proxyconn Inc. v. Microsoft Corp.*,
    No. SACV 11-1681 DOC ANX, 2012 WL 1835680
    (C.D. Cal. May 16, 2012) .................................................................................. 19

*Rock River Commc'ns, Inc. v. Universal Music Grp.*,
    No. CV-080635-CAS-AJWx, 2008 WL 11338096
    (C.D. Cal. Aug. 25, 2008) ................................................................................. 19

*Roland Corp. v. Inmusicbrands, Inc.*,
    No. 2:16-cv-06256-DBM-AJWx, 2017 WL 513924
    (C.D. Cal. Jan. 26, 2017) .................................................................................. 20

*Sabry Lee, Inc. v. Genera Corp.*,
    No. CV 08-5758-GW(PJWX), 2009 WL 10674318
    (C.D. Cal. Feb. 12, 2009) ................................................................................. 18

*Sidibe v. Sutter Health*,
    No. 12-cv-04854-LB, 2021 WL 879875 (N.D. Cal. Mar. 9, 2021) ................... 18

*Sloan Valve Co. v. Zurn Indus., Inc.*,
    712 F. Supp. 2d 743 (N.D. Ill. 2010) ............................................................... 21

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022) .............................................................. 19

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ....................................................................... 11, 16

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 477 (1993) .......................................................................................... 17

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................ 3

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE
DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
    No. SA-CV-15246-JLS-DFMx, 2015 WL 4545187 (C.D. Cal. July 8, 2015) .. 17

*Transphase Sys., Inc. v. S. California Edison Co.*,
    839 F. Supp. 711 (C.D. Cal. 1993) ................................................................. 3, 4

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) ............................................................................ 14

*Voda v. Corvis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ......................................................................... 14

*Vogel v. Huntington Oaks Del. Partners, LLC*,
    291 F.R.D. 438 (C.D. Cal. 2013)...................................................................... 20

*Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am.*,
    No. 1:19-cv-00416-LJO-SKO, 2020 WL 91998 (E.D. Cal. Jan. 8, 2020)......... 11

**STATUTES**

15 U.S.C. § 6a(1)(A) ............................................................................................ 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Plaintiff and Counterclaim-Defendant Shenzhen Smoore Technology Co. Ltd. ("Smoore") brought this lawsuit to enforce several patents related to components used in the manufacture of vaping systems. Seeking to gain leverage rather than defend on the merits, defendant Next Level Ventures, LLC ("NLV," an alleged competitor to Smoore) launched clumsy antitrust counterclaims that falter under well-established First Amendment principles and Supreme Court caselaw.

NLV has pled itself out of all its antitrust claims. First, NLV has pled a relevant product market—"closed cannabis oil vaporizer systems"—that is legally deficient on its face. Smoore is a manufacturer of components that **go into** the finished product "systems" constituting the alleged relevant product market, not the "systems" themselves. It is black-letter law that antitrust claims cannot succeed on an alleged relevant market in which the defendant does not participate. All of NLV's antitrust counterclaims must therefore be dismissed. (Counts III-VI.)

Second, NLV's boilerplate claims that Smoore is exercising "monopoly power" or has a "dangerous probability" of obtaining a monopoly are explicitly contradicted by the few facts NLV does allege. (Counts IV, V, VI.) As an initial matter, Smoore has zero market share in the alleged relevant market (in which it does not participate) and thus cannot be or plausibly become a monopolist. Even assuming Smoore did participate in the alleged relevant market, NLV has pled itself out of its monopolization claims. NLV concedes that Smoore's market position and profits have precipitously **declined**, that Smoore's "rapid decline in fortunes" started "around 2018 or 2019," and that "[e]ven as the market for cannabis vaporizers was growing, with sales as much as doubling between 2020 and 2022, Smoore's market share quickly began to erode" by at least 20 to 30 percent. ECF No. 36, NLV Answer & Countercl. ("A&C") ¶¶ 27-31; 83, 100. NLV's allegations belie its factually unsupported claims that Smoore is or has a dangerous probability of

1  exercising monopoly power.

2      NLV's arguments that it has been "substantially foreclosed" from the relevant

3  market are also factually threadbare and contradicted by the counterclaims. Again,

4  Smoore could not have excluded NLV from a relevant market in which neither

5  company participates. And NLV's allegations that Smoore has ceded substantial

6  market share *to NLV* and other "upstart American competitors" at increasing rates

7  since 2018, A&C ¶ 29, refutes any notion that Smoore can "substantially foreclose"

8  NLV or any competitor from the alleged market. NLV's sole factual allegation in

9  support of its alleged foreclosure is its claim that Smoore has an exclusive

10  agreement with a single U.S. distributor. But the law is clear: NLV's alleged loss of

11  access to a single distributor is insufficient to establish substantial foreclosure.

12      NLV's counterclaims that Smoore's patent enforcement efforts are

13  anticompetitive also fail as a matter of law. (Counts IV, V, VI.) These claims are

14  categorically barred by the First Amendment and *Noerr-Pennington* immunity.

15  NLV's allegations that Smoore has engaged in "sham litigation," based in large part

16  on the '623 patent that is not even at issue here, ongoing Chinese patent litigation

17  against a third party that Smoore has twice won, and the present litigation, fall far

18  short of satisfying any of the narrow exceptions to *Noerr-Pennington* immunity.

19      Further, NLV's induced infringement counterclaim does not plead the

20  requisite knowledge, and its and A&A's affirmative defenses are deficiently pled.

21      NLV's antitrust and patent counterclaims should be dismissed in their entirety

22  for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and

23  NLV's and A&A's affirmative defenses should be stricken. In the alternative, if any

24  antitrust counterclaims proceed, they should be bifurcated and discovery stayed.

25  ## II.   LEGAL STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

26      To survive dismissal, a counterclaim must allege sufficient facts to rise above

27  the "speculative," "conceivable," or "possible," and instead must "state a claim to

28  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545,

547, 555, 563, 570, 591 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*, 146 F. Supp. 3d 1217, 1225 (S.D. Cal. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

## III.    NLV'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

NLV fails to plausibly state a claim for relief with its allegations that Smoore (1) has restrained competition in or monopolized a relevant market for "closed cannabis oil vaporizer systems," (2) used anticompetitive distribution agreements in distributing its products, (3) has enforced its patents through anticompetitive litigation, (4) has a dangerous probability of monopolizing any relevant market, (5) has violated the California Cartwright Act, or (6) is infringing one of NLV's patents.

### A. NLV Fails to Allege a Relevant Market in Which Smoore Actually Competes, as Required for All of Its Antitrust Claims

Defining a relevant product market is a necessary "threshold step in any antitrust case." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). To support a claim for antitrust liability, that market must encompass "the area of effective competition" in order to reliably "measure the defendant's ability to lessen or destroy competition." *Id.* (citing *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018)). "It is axiomatic in antitrust law that a defendant may not be found liable under the Sherman Act for monopolizing or attempting or conspiring to monopolize a market unless that defendant is a competitor in the relevant market . . . ." *Transphase Sys., Inc. v. S. California Edison Co.*, 839 F. Supp. 711, 717 (C.D. Cal. 1993) (granting motion to dismiss where antitrust defendants "[we]re not really competitors in th[e alleged] product market").

NLV's antitrust counterclaims must be dismissed because they allege a relevant product market in which Smoore does not even compete. NLV alleges that

3

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS. No. 2:22-cv-07646-AB-AGR

the relevant product market is "closed cannabis oil vaporizer systems," A&C ¶ 70, and that such systems are sold by "cannabis oil producers . . . to retail outlets and consumers through various retail methods." *Id.* ¶ 68; *see also id.* ¶ 79 ("Closed cannabis oil vaporizer systems are thus a distinct market . . . [and] are sold to ***cannabis consumers***.") (emphasis added). Smoore does not sell anything to either "retail outlets [or] consumers." But, as NLV admits, Smoore sells "wholesale vaporizer hardware" to cannabis oil producers, who then assemble that hardware into complete "systems" with the key ingredient—the cannabis itself—which are then sold to consumers. *See id.* ¶¶ 68-69 ("Neither Smoore, through CCELL, nor NLV produce cannabis oil or cannabis products."). NLV also admits that Smoore could not sell what it defines as "closed cannabis oil vaporizer systems" to consumers, because "[c]annabis is illegal in China," where Smoore manufactures its hardware. *Id.* ¶ 19. NLV's factual allegations, if proven, would establish that Smoore is a supplier of ***some* component parts** for "closed cannabis oil vaporizer systems," not the systems themselves.

NLV thus bases its entire panoply of antitrust claims on an impossible allegation: that Smoore "had and has monopoly power in the closed cannabis oil vaporizer **systems** market in the United States." *Id.* ¶ 94 (emphasis added). Smoore's share of that "market" is zero. NLV's antitrust claims cannot survive its admission that Smoore ***does not even compete*** in this alleged market. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015) ("The complaint posits three relevant markets . . . Because [defendant] is not a competitor in any of the three markets, they cannot serve as the basis for a § 2 monopoly claim."); *Transphase Sys.*, 839 F. Supp. at 717.

**B. NLV's Allegations of Anticompetitive Contracts Between Smoore and Its Distributors Fail to State a Claim.**

NLV's claims that it has been harmed by Smoore's contracts with its distributors fail as a matter of law. *See* A&C ¶¶ 119-45 (Counts III (conspiracy), IV

4

(monopolization), V (attempted monopolization), and VI (Cal. Cartwright Act)).

### 1. NLV Cannot Show Antitrust Injury from Its Allegations that Smoore Conspired to Inflate Prices

To properly allege a claim under the Sherman Act, NLV must plausibly allege "antitrust injury." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This requires more than simply alleging an "injury causally linked" to an antitrust violation—the injury **must** be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* NLV's own pleading demonstrates that it cannot have suffered an antitrust injury from allegedly inflated prices under clear Supreme Court precedent.

NLV pled that it is a competitor to Smoore. *See, e.g.*, A&C ¶¶ 28, 129. Supreme Court precedent holds that competitors lack standing to challenge alleged conduct under the Sherman Act that allegedly raises prices or restricts output, because such alleged harms benefit competitors like NLV:

> Nor can respondents recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, but **it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price** [of the relevant product]. Finally, for the same reason, respondents cannot recover for a conspiracy to impose nonprice restraints that have the effect of either raising market price or limiting output. Such restrictions, though harmful to competition, **actually benefit competitors by making supracompetitive pricing more attractive.**

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (emphasis added); *see Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 337 (1990) ("A competitor may not complain of conspiracies that set minimum prices at any level."); *Morning Star Packing Co. v. SK Foods, L.P.*, No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459, at *7 (E.D. Cal. June 14, 2017) (holding that competitors cannot suffer antitrust injury from "an arrangement to sell to a limited number of distributors with a goal of avoiding intragroup competition").

5

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS. No. 2:22-cv-07646-AB-AGR

All of NLV's Sherman Act claims based on an alleged agreement between Smoore and its distributors to fix or raise prices, allocate customers, or otherwise limit competition thus fail to allege antitrust injury and should be dismissed.

### 2. NLV's Alleged Injuries from Smoore's Distribution Contracts Are Conclusory, Implausible, and Trivial.

"Antitrust laws are designed to protect competition, not competitors," and require that any alleged "restraint must be of significant magnitude, and more than trivial." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 951 (9th Cir. 1998). NLV's alleged injuries lack any factual support and allege, at best, a trivial loss of access to a single distributor rather than market-wide harm.

First, NLV alleges without factual support that Smoore caused it to "incur[] higher costs to manufacture and distribute closed cannabis oil vaporizer systems." *See* A&C ¶¶ 125, 126, 133, 139. There is nothing in the counterclaims to substantiate any plausible causal link between Smoore's conduct and NLV's manufacturing costs, let alone the "direct" causal link required by the Ninth Circuit. *See Choker v. Pet Emergency Clinic, P.S.*, No. 22-35650, 2023 WL 8888632, at *1 (9th Cir. Dec. 26, 2023) (affirming dismissal for lack of antitrust injury and holding that "[a]n antitrust injury must be the direct result of the defendant's conduct[,] . . . [and] may not be derivative and indirect or secondary, consequential, or remote") (internal quotations omitted). ***None*** of NLV's allegations even mention its manufacturing of cannabis vaporizer components or complete "closed cannabis oil vaporizer systems," let alone attempt to explain how any of Smoore's alleged conduct would affect its manufacturing costs. NLV's claim to have incurred higher **manufacturing** costs is thus completely unsupported and utterly implausible.

Second, NLV's allegations of increased distribution costs are similarly threadbare, describing only trivial harm to itself. These allegations boil down to a **single** alleged missed opportunity: the purported loss of a former distributor, Greenlane, when that company "merged with KushCo Holdings." A&C ¶ 64. Loss

6

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS. No. 2:22-cv-07646-AB-AGR

of access to a single distributor (across the entire U.S. market) does not constitute antitrust injury or market-wide impact on the alleged market. Calling this an "important distribution opportunity with one of the largest distributors in the United States," *id.*, is facially insufficient to show the requisite antitrust injury. The antitrust laws do not exist to ensure that NLV can win every opportunity for every distribution relationship in the marketplace. Indeed, battles over exclusive opportunities like the one purportedly created by the Greenlane-KushCo merger are "a vital form of rivalry, and often the most powerful one, which the antitrust laws encourage rather than suppress." *Applied Med. Res. Corp. v. Ethicon, Inc.*, No. SA-CV-031329-JVS-MLGx, 2006 WL 1381697, at *2 (C.D. Cal. Feb. 3, 2006).

### 3. NLV Fails to Allege the "Substantial Foreclosure" Required for Exclusive Dealing Claims Under the Sherman Act.

Exclusive dealing arrangements violate the Sherman Act only if their "effect is to foreclose competition in a **substantial share** of the line of commerce affected." *Id.* (emphasis added, internal citations omitted). NLV fails to state a claim of this required substantial foreclosure because (1) it does not plausibly allege foreclosure from a relevant market from the loss of a single distributor while Smoore was allegedly in rapid decline; and (2) it admits that other distribution channels exist (including self-distribution and other large national distributors) but ignores them entirely in its foreclosure allegations.

### a. NLV's Allegations Fail to Plausibly Show That It Was Foreclosed from a "Substantial" Portion of Any Market.

NLV fails to plausibly allege impact on any market that would permit an inference of "substantial" foreclosure. Because "[t]here are well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition," a showing of "substantial" foreclosure is necessary to avoid chilling procompetitive conduct. *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). "To plausibly allege foreclosure . . . [in a]

7

market—in a substantial share or otherwise—plaintiffs at the very least needed to plead facts sufficient to support the inference that the exclusive dealing arrangements have some appreciable impact on the market." *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018). NLV's counterclaims fail this test, alleging at most, "foreclosure" from a single distribution opportunity with Greenlane. A&C ¶¶ 64, 25-26.

The remainder of NLV's allegations amply demonstrate that NLV has not been substantially foreclosed from any market by Smoore. As NLV admits, despite Smoore's early entry into the industry, Smoore has **lost** many customers and ceded much of its early lead as other players have entered the market with competing products. NLV alleges that Smoore went through a "precipitous" loss of market share, losing between 30-40% in a period of less than five years, with Smoore's largest market share losses occurring since 2022.[2] *Id.* at ¶¶ 29-30. NLV alleges **no** point at which Smoore has been able to improve its market position at all—at the expense of NLV or any of the other numerous "upstart American competitors" that recently flooded the U.S. market. *Id.* at ¶ 29. And during the period of the purported conspiracy, Smoore was alleged to miss its financial targets so dramatically that it was forced to issue warnings to investors in 2023. *Id.* at ¶ 100. It defies logic that Smoore could simultaneously be in precipitous decline while substantially foreclosing market share from NLV across the U.S.

According to NLV, Smoore's decline was a direct result of other competitors responding to demand more nimbly in the market and consistently taking business

---

[2] These percentages assume that NLV has actually pled a proper relevant market, in which NLV alleges that Smoore's "market share" for "closed cannabis oil vaporizer systems" fell to "approximately 50-60%" sometime in 2023. A&C ¶¶ 30, 83. But as explained earlier, *see supra* Section III.A., Smoore's "market share" in the sale of such systems is actually zero because it does not sell the product NLV has alleged as comprising the relevant market. This failure makes it impossible to assess what portion of any market is actually "foreclosed," if any.

from Smoore by providing a better product to consumers. *Id.* at ¶¶ 27-28. In other words, NLV has managed to "plead itself out of court by alleging facts that are inconsistent with its claim." *FLAA v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 692 (9th Cir. 2022) (affirming dismissal of Sherman Act claims). NLV's claims of substantial foreclosure are therefore implausible and should be dismissed.

### b.  NLV's Allegations Ignore Self-Distribution Realities.

NLV's market foreclosure arguments ignore the reality, recognized in the complaint and the ITC Initial Determination, of self-distribution. Courts recognize that, when a competitor can reach their target customer "by employing existing or potential alternate channels of distribution," there is no substantial foreclosure in the relevant market. *See Barnes v. JFK Mem'l Hosp., Inc.*, No. EDCV17681JGBSPX, 2017 WL 7240813, at *7 (C.D. Cal. Aug. 28, 2017).

Addressing the availability of such alternatives is key to plausibly pleading any claim of substantial foreclosure. *Id.* (citing 2A Areeda, Antitrust Law ¶ 570b1 (foreclosure calculation "includes the full range of selling opportunities reasonably open to rivals"). NLV's counterclaims admit that self-distribution is a reality of the market and it is currently utilized by Smoore. A&C ¶ 52. And despite pointing repeatedly to the ITC's Initial Determination, NLV conspicuously fails to note the ALJ's finding that "[i]n many instances, a distribution partner such as Greenlane or Jupiter is **skipped entirely** because the CCELL-branded products are drop-shipped from Smoore in China directly to [cannabis oil producer] customers in the United States." A&C Ex. 2, ITC Initial Determination ("ITC ID") at 97 (emphasis added). NLV fails to allege any reason that option would not be a sufficient alternative for NLV. The presence of alternative distribution channels and NLV's failure to allege why NLV cannot utilize those alternatives are lethal to their Sherman Act counterclaims as a matter of law. Here, NLV is "free to sell directly, to develop alternative distributors, or to compete for the services of the existing distributors. Antitrust laws require no more." *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157,

1163 (9th Cir. 1997); *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018) (affirming dismissal of Sherman Act Section 1 claims where pleadings lacked "a sufficient factual basis from which it is possible to infer that any particular portion of the [] market was foreclosed as a result of exclusive dealing").

### C. NLV's Claims that Smoore's Enforcement of its Patents is Anticompetitive Are Barred by *Noerr-Pennington* Immunity.

NLV's claim that Smoore is unlawfully excluding competitors by enforcing its patent rights also fails as a matter of law. *See* A&C ¶¶ 127-45 (Counts IV (monopolization), V (attempted monopolization), and VI (California Cartwright Act)). Smoore's petitioning of the courts for resolution of its patent infringement claims is protected under the First Amendment and the Supreme Court's *Noerr-Pennington* doctrine. *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability."). Those constitutional protections extend equally to all patent enforcement efforts, whether successful or not. "Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998).

Antitrust claims attacking patent enforcement efforts "pose[] a unique risk to the exercise of First Amendment rights" because "the long drawn out process of [antitrust] discovery can be both harassing and expensive." *Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-cv-02233 WBS AC, 2022 WL 4387981, at *3 (E.D. Cal. Sept. 22, 2022). They also seriously risk "chill[ing] legitimate patent enforcement efforts because of the fear of the vexatious or punitive consequences of treble damages suits." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876 (Fed. Cir. 1985). As such, before NLV can weaponize allegations of "sham litigation" against Smoore's rights under the First Amendment and patent law to petition the courts, those allegations should be subject to heightened standards under Ninth and Federal

Circuit law. Those standards "require more specific allegations than would otherwise be required," *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1036, 1059 (9th Cir. 1998), particularly where fraudulent conduct is alleged. *See FutureLogic, Inc. v. TransAct Techs., Inc.*, No. CV 05-03754 MMM (CTx), 2007 WL 9700696, at *7 (C.D. Cal. Oct. 30, 2007) (under Federal Circuit standard, claims that *Noerr-Pennington* immunity does not apply due to alleged fraud "must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure").

The Federal Circuit has recognized only two narrow exceptions to the broad protections of *Noerr-Pennington* immunity.[3] First, a lawsuit may be considered a "sham" only if it is both "objectively baseless" and brought with "unlawful" motivation to destroy competition. *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 8727693, at *7 (C.D. Cal. Feb. 17, 2009). Second, a party may lose *Noerr-Pennington* protections if it "commits knowing fraud on a court by making intentional misrepresentations severe enough to deprive the litigation of its legitimacy." *Id.* (internal quotations omitted). Finally, while the Federal Circuit has never "expressly recognize[d]" any other immunity exception, *id.*, the Ninth Circuit has carved out a third exception for a "series of lawsuits" when "brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

Under the heightened pleading standard applicable here, NLV must plead "**specific allegations** demonstrating that" an exception is met and "the *Noerr-Pennington* protections **do not apply**." *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am.*, No. 1:19-cv-00416-LJO-SKO, 2020 WL 91998, at *7 (E.D.

---

[3] Because issues of *Noerr-Pennington* immunity often arise as part of counterclaims to patent infringement lawsuits, the Federal Circuit has held that its own precedent applies to the question of immunity in that context, while law of the regional circuit applies for all other aspects of an antitrust claim. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067-68 (Fed. Cir. 1998).

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

Cal. Jan. 8, 2020) (emphasis added). NLV thus bears the burden. NLV's counterclaims fail to pass muster under both the heightened pleading standard here and the plausibility requirement under *Twombly*, and should be dismissed.

### 1. NLV Fails to State a Claim that Smoore's Patent Claims Constitute "Sham Litigation"

#### a. NLV Does Not Plausibly Allege that Smoore's U.S. Patent Enforcement Efforts Are Objectively Meritless

NLV's counterclaims cannot fit within the narrow first "sham litigation" exception to First Amendment immunity. Regarding the ITC proceeding instituted by Smoore, NLV cherry-picks certain findings of the ITC, *see* A&C ¶¶ 40-43, to implausibly allege that Smoore's patent claims there were wholly lacking in objective merit. In the ITC proceeding, Smoore alleged infringement of three utility patents (the '623 Patent, '762 Patent, and '763 Patent) and one trademark against NLV and others. Most of NLV's sham allegations focus myopically on the '623 Patent, claiming that the patent is unenforceable due to an inaccurate statement made by a patent agent (who was not representing Smoore) as part of the application process. But the '623 Patent is ***not*** part of Smoore's claims in the instant lawsuit—and NLV admits as much. A&C ¶ 44. NLV's conclusory and nonsensical allegation that "the real goal of this litigation is to attempt to enforce the much broader rights under the '623 Patent," *id.* ¶ 128, is irrelevant to the objective merit of Smoore's patent claims in this lawsuit on wholly separate patents. NLV has thus pled nothing that could plausibly support a finding that the **current lawsuit** is objectively meritless, as required.

In his Initial Determination, the ITC Administrative Law Judge ("ALJ") simply found that Smoore had not provided sufficient evidence to satisfy the ITC's "domestic industry" test—an analysis of a patentee's investments in the U.S. economy related to its claimed patent that is not an element of patent claims in district court. NLV's conclusory allegations that Smoore's arguments to the ITC on the domestic industry test were "improper," "wrongful," and "misrepresentations"

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

twist the findings of the ALJ beyond recognition. The ALJ nowhere applied these pejoratives to Smoore's arguments, finding instead, as a purely evidentiary matter, that some but not all of the U.S. investments and expenses claimed as "domestic industry" by Smoore were cognizable under that doctrine. The ALJ concluded that there was insufficient evidence in the record to "adjust [those] investments to reflect properly cognizable investments." *See* A&C, Ex. 2 at 95-102. That is run-of-the-mill fact-finding, not an endorsement of NLV's extreme and implausible position that Smoore's claims were **objectively** meritless. And it is wholly insufficient to satisfy NLV's pleading burden where First Amendment rights are at stake, because a "heightened pleading standard . . . would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991).

Without the benefit of its specious argument regarding the "domestic industry" test, NLV's counterclaims are bereft of ***any*** factual allegations that could support a finding of objective baselessness as to Smoore's '762 Patent, '763 Patent, or trademark claims at the ITC. NLV's sham litigation claim as to the ITC proceeding therefore fails as a matter of law. *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1221–22 (E.D. Cal. 2005) ("Thus, [defendant's] allegation that a single claim is objectively baseless does not bring [plaintiff's] filing of the entire complaint within the sham exception.").

### b. NLV's Allegations Regarding Smoore's Enforcement Efforts in China Fail to State a Claim

NLV's allegations about Smoore's patent claims in China offer no plausible support for the required showing of a lack of objective merit, and cannot support an antitrust claim. NLV improperly asks this Court to decide the validity of foreign patents and alleges no effect on U.S. commerce.

First, as NLV concedes, Smoore's Chinese patent claims were not even

13

asserted against NLV. *See* A&C ¶ 45. Smoore brought a design patent claim against Naixing, which happened to be an NLV supplier. *Id*. NLV fails to allege any facts suggesting that Smoore's prosecution of patent claims in China, against a third party, had any proximate impact on NLV in the U.S.

Second, NLV admits that Smoore **prevailed** at the Shenzhen Intermediate People's Court (the lower court) because Naixing "did not adequately establish its defenses." A&C ¶ 9. Yet NLV's claims omit that Smoore prevailed **again** at the appellate level in its patent infringement claims against Naixing. *See* Koons Decl., Ex. A (Decision of the Guangdong High People's Court) at 9-12.[4] This further demonstrates that the Chinese action was anything but meritless. "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Prof'l Real Est. Invs.*, 508 U.S. at 60 n.5.

Third, NLV's claim improperly seeks to extend U.S. antitrust law to attack and relitigate foreign patent proceedings. The Federal Circuit has recognized that U.S. "courts should not determine the validity and infringement of foreign patents," as would be required to assess whether this ***Chinese*** patent proceeding was objectively baseless. *Voda v. Corvis Corp.*, 476 F.3d 887, 899 (Fed. Cir. 2007) (recognizing the "independence of each country's sovereign patent systems and their systems for adjudicating those patents"). NLV also alleges nothing about the effect Smoore's Chinese patent claims had on U.S. commerce. This is fatal to NLV's allegations because foreign conduct is actionable only when it has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. 15 U.S.C. § 6a(1)(A). The Supreme Court defines a "direct effect" as one that "follows as an immediate consequence of the defendant's activity." *United States v. LSL*

---

[4] The Court may take judicial notice of foreign court decisions for purposes of deciding a motion to dismiss when "the facts noticed are not subject to reasonable dispute." *GT Beverage Co. v. Coca Cola Co.*, No. SACV 10-00209-JVS (RNBx), 2010 WL 11595832, at *2 (C.D. Cal. Aug. 2, 2010).

14

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

*Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004). NLV alleges no effect at all

from this Chinese litigation against a Chinese supplier, let alone an "immediate" one

on the U.S. market. NLV's sham allegations regarding Smoore's Chinese patent

litigation must therefore be dismissed.

### 2. NLV's Allegations of Intentional "Misrepresentations" and "Knowingly Fraudulent" Statements Cannot Defeat *Noerr-Pennington* Immunity.

NLV's inflammatory and unsupported allegations regarding "fraudulent"

conduct and "misrepresentations" to the ITC and the Chinese court do not satisfy

NLV's burden under the second exception to *Noerr-Pennington* immunity—that

Smoore allegedly committed "knowing fraud on a court by making intentional

misrepresentations severe enough to deprive the litigation of its legitimacy."

*Aventis*, 2009 WL 8727693, at *7. This exception requires more than claims that

alleged fraud may have influenced a tribunal's decision. *Omni Res. Dev. Corp. v.

Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (such allegations "can easily be

leveled" and are "thus insufficient by [themselves] to overcome *Noerr-Pennington*

immunity.").

NLV fails to allege that the ITC action was influenced at all by any alleged

misrepresentations by Smoore. Indeed, the ALJ in the ITC action found for NLV

after the factual disputes it hyperbolizes into "misrepresentations" were argued

before and considered by the ALJ. As such, even if Smoore made any such

misrepresentations (it did not), it had zero impact on the outcome of the proceedings

and thus had no impact on NLV. *See MedImmune, Inc. v. Genentech, Inc.*, No. CV

03-2567 MRP, 2003 WL 25550611, at *7 (C.D. Cal. Dec. 23, 2003) (holding that

sham claim failed where tribunal "did not rely" on alleged misrepresentation, so

party "could not have sustained [any] injury").

NLV's allegations likewise fail with regard to the Chinese patent action. NLV

alleges that Naixing has "uncovered evidence" regarding the Chinese litigation that

it claims supports Naixing's invalidity defenses. *Id.* ¶¶ 12, 46. But the Chinese

15

1    appellate court already considered (and rejected as insufficient) the "video from the
2    conference in question" that NLV alleges as proof of misrepresentation, *see* A&C
3    ¶ 46, and ruled for Smoore while fully aware of the factual dispute over the alleged
4    misrepresentation at issue here and despite Naixing's request for an extension to
5    take additional U.S. discovery. *See* Koons Decl., Ex. A at 9, 12. This is yet another
6    example of NLV "simply recast[ing] disputed issues . . . as 'misrepresentations,'"
7    which cannot meet their burden under a heightened pleading standard. *Mohla*, 944
8    F.2d at 535. The Chinese action is also still ongoing, as Naixing has petitioned the
9    Supreme People's Court for review of the two rulings in Smoore's favor. NLV thus
10   has no basis to claim that either prior action (and certainly not this one) has been
11   "deprived of its legitimacy" as required to support the second exception to *Noerr-*
12   *Pennington* immunity.[5]

### 3.  NLV Cannot Demonstrate a "Policy" or "Pattern" of Allegedly Baseless Suits.

13
14       The Federal Circuit has not recognized any additional exception to *Noerr-*
15   *Pennington* immunity for a series of lawsuits. *See Aventis*, 2009 WL 8727693, at *7.
16   But assuming a Ninth Circuit exception applies here, NLV's counterclaims cannot
17   fit within it. NLV's attempt to allege a "pattern and practice . . . to assert patents that
18   Smoore knew or should have known were invalid and unenforceable," A&C ¶ 48,
19   falls far short of adequately pleading a "series of lawsuits . . . brought pursuant to a
20   policy of starting legal proceedings without regard to the merits and for an unlawful
21   purpose" under Ninth Circuit precedent. *Sosa*, 437 F.3d at 938.
22       NLV has alleged at most three proceedings: the ITC action, a Chinese court
23

24   _____
25   [5] NLV nowhere characterizes its allegations as stating a so-called "*Walker Process*"
     claim, which has distinct legal criteria from "sham litigation" and focuses on fraud
26   on the U.S. Patent and Trademark Office rather than on a court. NLV could not
     satisfy that "difficult . . . to meet" standard regardless, *MedImmune*, 2003 WL
27   25550611, at *9-10, as nothing in its conclusory allegations plausibly suggests
     fraudulent conduct by Smoore.
28

action to enforce a design patent (which Smoore won at the lower court and appellate levels), and this lawsuit covering a set of patents only partially overlapping with those at issue in the ITC action. The Ninth Circuit has held that a mere "handful of legal proceedings," like NLV alleges here, "does not amount to a 'pattern' of baseless claims" even if assuming that those prior claims are lacking in merit. *Kottle*, 146 F.3d at 1063. And courts in this district have repeatedly held that four actions—more than NLV alleges here—are not enough. *See, e.g.*, *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA-CV-15246-JLS-DFMx, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) ("[Plaintiff's] three lawsuits and International Trade Commission activity do not constitute a 'series of lawsuits' within the meaning of the 'pattern exception.'"). NLV thus fails to state a claim under any potentially applicable exception to *Noerr-Pennington* immunity.

### D. NLV Fails to Plausibly Allege a "Dangerous Probability" of Monopolization

A "dangerous probability of achieving monopoly power" is an essential element of any attempted monopolization claim. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 477, 456 (1993). As an initial matter, NLV's attempted monopolization claim fails because Smoore does not compete in the alleged relevant product market and thus has zero percent market share. There is thus no dangerous probability that Smoore will achieve monopoly power. *See* supra Section III.A.

Even assuming Smoore possesses the market shares alleged (it does not), NLV's allegation of a "dangerous probability" of monopolization is classic boilerplate. NLV's allegations are also directly contradicted by admissions that Smoore's market position and profits have precipitously **declined**. A&C ¶¶ 26-30, 100. NLV admits that Smoore's "rapid decline in fortunes" started "around 2018 or 2019, [when] Smoore began losing market share to [NLV and other] upstart American competitors." *Id*. ¶¶ 31, 28-29. And "[e]ven as the market for cannabis vaporizers was growing, with sales as much as doubling between 2020 and 2022,

17

Smoore's market share quickly began to erode." *Id.* ¶ 30. "Between 2018 and 2023, Smoore's market share" **dropped** by at least 20-30%. *Id.* Smoore's rapid decline, NLV alleges, is reflected in Smoore's publicly available annual reports. *Id.* ¶ 100 & nn.11-13. NLV argues that "[i]n 2022, Smoore's total revenue declined as its gross profit margin dropped sharply, [from 53.6%] to 43.4%. In 2023, Smoore issued a warning to investors that net profit for the first 6 months of the year would be starkly lower than the previous year as revenues had declined again." *Id.*

Indeed, NLV alleges that Smoore's hemorrhaging of business and profit margin has only ***accelerated*** in recent years, well after any alleged "plan to suppress and eliminate competition" was launched. *Id.* ¶¶ 30-31 ("Most of this market share loss did not take place until 2022."). It is wholly implausible that this accelerating decline could suddenly reverse course when assuming NLV's factual allegations are accurate—and yet that is exactly what would be required to demonstrate a "dangerous probability" of monopolization. *See Sidibe v. Sutter Health*, No. 12-cv-04854-LB, 2021 WL 879875, at *9 (N.D. Cal. Mar. 9, 2021) (granting summary judgment on lack of dangerous probability of monopolization where evidence showed "either no increase or falling market share"). And such a theory is contradicted by NLV's argument that there are "serious weakness[es] with Smoore's products" and that "competing" companies have successfully "take[n] advantage of Smoore's failure to keep up" with better competing technology. A&C ¶¶ 27, 28. NLV thus cannot plausibly allege a dangerous probability of monopolization and its attempted monopolization claim should be dismissed.

## E. NLV's California Cartwright Act Claim Fails for the Same Reasons as its Sherman Act Claims.

NLV's duplicative claim under the California Cartwright Act, based on exactly the same allegations as its Sherman Act claims, should be dismissed for the same reasons. *See Sabry Lee, Inc. v. Genera Corp.*, No. CV 08-5758-GW(PJWX), 2009 WL 10674318, at *5 (C.D. Cal. Feb. 12, 2009) ("The analysis under

18

California's Cartwright Act mirrors the analysis under federal law because the act was modeled after the Sherman Act."). The protections of the First Amendment and the *Noerr-Pennington* doctrine apply with equal force to state law claims, *see Rock River Commc'ns, Inc. v. Universal Music Grp.*, No. CV-080635-CAS-AJWx, 2008 WL 11338096, at *4 (C.D. Cal. Aug. 25, 2008), and NLV has failed to allege facts fitting with any of the narrow exceptions to immunity. And the same principles of antitrust standing and the requirement for antitrust injury, long recognized by the Supreme Court, also apply under California law. *See Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App. 4th 1224, 1234-35 (1993) (recognizing that "antitrust injury" under California law is defined by the same standard as federal law: the "type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful").

## F. NLV's Patent Counterclaim Should Be Dismissed.

NLV's claim that Smoore "actively, knowingly, and intentionally induces others, including its customers and end users, to infringe one or more claims of the '294 Patent" should be dismissed because it fails to adequately plead knowledge. A&C ¶ 148. Induced infringement requires knowledge of the patent and knowledge of patent infringement. *Commil USA, LLC v. Cisco Sys., Inc*., 135 S. Ct. 1920, 1926 (2015). However, "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *6 (C.D. Cal. May 16, 2012); *see also Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 645 (N.D. Cal. 2022) (finding "a mere allegation of 'knowledge' remains conclusory and insufficient" for induced infringement). NLV only pleads that "Smoore has had **_knowledge_** of the '294 Patent at least **_as of the filing of this counterclaim_**." A&C ¶ 148 (emphasis added). Because NLV fails to plead knowledge by Smoore with any particularity at the relevant time, NLV's induced infringement claim should be dismissed.

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR

## IV.    NLV's AND A&A's AFFIRMATIVE DEFENSES SHOULD BE STRICKEN

Rule 12(f) of the Federal Rules of Civil Procedure authorizes this Court to "strike from a pleading" any "insufficient defense." Fed. R. Civ. P. 12(f). Courts in the Central District apply the standard set in *Twombly* and *Iqbal* for pleadings to affirmative defenses. *Vogel v. Huntington Oaks Del. Partners, LLC,* 291 F.R.D. 438, 440 (C.D. Cal. 2013). As such, parties are required to plead their affirmative defenses to the standard of *Twombly* and *Iqbal*, or they should be stricken.[6]

**First and Second Affirmative Defenses.** Failure to state a claim and noninfringement are not cognizable affirmative defenses and should be stricken. *Figueroa v. Marshalls of CA, LLC*, No. CV11-06813-RGK (SPx), 2012 WL 1424400, at *3 (C.D. Cal. Apr. 23, 2012) (failure to state a claim); *Roland Corp. v. Inmusicbrands, Inc.*, No. 2:16-cv-06256-DBM-AJWx, 2017 WL 513924, *2 (C.D. Cal. Jan. 26, 2017) (noninfringement).

**Third, Fourth, Fifth, Eighth, Twelfth, and Thirteenth Affirmative Defenses.** NLV and A&A provide no underlying factual basis, and even fail to recite many of the requisite elements for these affirmative defenses. Because this fails to meet the pleading standard of *Twombly* and *Iqbal*, they should be stricken.

**Sixth and Eleventh Affirmative Defenses.** Smoore has been the original assignee and sole owner of all the Patents-in-Suit since their inception. Furthermore, Smoore pled that it is "the sole and exclusive owner of all right, title and interest in the '762, '763, D544, D534, and D635 Patents and holds the exclusive right to take all actions necessary to enforce its rights." Complaint ¶ 19. As such, both these defenses should be stricken.

**Seventh and Ninth Affirmative Defenses.** The Federal Circuit has stated that "limitation[s] on damages, [are] not . . . affirmative defense[s]." *Arctic Cat Inc.*

---

[6] NLV's and A&A's affirmative defenses are identical.  *Compare* Case No. 07646-AB-AGR, ECF No. 36 at 8-11, *with* Case No. 08014-AB-AGR, ECF No. 35 at 8-11.

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS. No. 2:22-cv-07646-AB-AGR

*v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). As such, these defenses should be stricken.

**Tenth Affirmative Defense.** Contesting attorney's fees pursuant to 35 U.S.C. § 285 is not a cognizable affirmative defense. *Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 756 (N.D. Ill. 2010), as corrected (May 6, 2010). As such, this defense should be stricken.

## V. IN THE ALTERNATIVE, SHOULD THE COURT NOT DISMISS ALL ANTITRUST COUNTERCLAIMS, THE COURT SHOULD BIFURCATE AND STAY THE ANTITRUST COUNTERCLAIMS PENDING RESOLUTION OF THE PATENT CLAIMS

### A. Legal Standard for Bifurcation and Stay

Under Federal Rule of Civil Procedure 42(b), courts have broad discretion to try claims separately to "increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Michael Kors, L.L.C. v. Chunma USA, Inc.*, No. CV 16-01271-AB (AFM), 2017 WL 5665003 at *1 (C.D. Cal. Aug. 30, 2017) (Birotte, J.) (bifurcating liability and damages in trademark matter). Regarding antitrust counterclaims in patent matters, "[s]o many cases have granted motions to bifurcate patent-related antitrust claims from infringement claims, that even the Federal Circuit has commented that granting bifurcation is 'now-standard practice.'" 6 ANPATDIG § 39:100 (June 2023 Update) (quoting *In re Innotrol Diagnostics*, 800 F.3d 1077, 1084 (Fed. Cir. 1986)). Also, when addressing antitrust counterclaims in patent matters, "district courts often stay an antitrust counterclaim until the issues of patent infringement and validity are resolved." *Fitbit, Inc. v. Aliphcom*, No. 5:15-CV-04073-EJD, 2016 WL 7888033, at *1 (N.D. Cal. May 27, 2016). Bifurcation and a stay of antitrust counterclaims are specifically warranted when the resolution of the initial patent claims would "inform[]" a determination of whether a counterclaimants allegations that those initial patent claims were a "sham." *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1180 (D. Or. 2021)

21

**B. Bifurcation of the Antitrust Counterclaims is Warranted.**

Bifurcation of the antitrust counterclaims is required here: (1) to promote judicial economy by expediting the resolution of the patent claims, which might eliminate the need for ever addressing the antitrust counterclaims and avoid potentially unnecessary discovery expense; (2) to reduce the risk of confusing the jury while simplifying the evidence and issues to be presented; and (3) to avoid potential prejudice to Smoore by the presentation of irrelevant and inflammatory evidence that might improperly impact the jury when assessing the patents at issue.

First, bifurcation of the antitrust claims will conserve both judicial and party resources and promote efficiency. *Edwards Vacuum,* 556 F. Supp. 3d at 1180 ("Bifurcation allows for (1) quicker resolution of the intellectual property infringement issue as there is less discovery required, and (2) judicial economy as the antitrust and unfair competition claims may not have to be heard if intellectual property infringement is proved in the first trial.") (internal alterations omitted). Resolution of NLV's antitrust counterclaims may never be necessary, or their scope will at least be significantly narrowed if the initial, patent claims are resolved in Smoore's favor. For example, if the jury finds that Smoore's patents are valid during the patent case, that would require a finding that Smoore's filing of the patent case was not a sham and likely lead to the dismissal of NLV's counterclaims. *Id*.

Bifurcation could also eliminate the need for expensive antitrust fact and expert discovery. Here, the antitrust counterclaims will require resolution of a myriad of issues that are unconnected to the patent claims, including industry practices related to exclusivity and distribution agreements, market foreclosure, potential business justifications for certain conduct, antitrust causation and antitrust injury. Indeed, NLV has already served 66 expansive requests for production on antitrust issues, seeking documents from the last ten years related to Smoore's manufacturing, marketing, distribution, sales, pricing, business strategy, market analysis, communications with other industry players, and many other topics. *See*

Koons Decl. ¶ 4. Bifurcating the antitrust counterclaims will remove these complex tangents, as well as the extensive issues related to the *Noerr-Pennington* doctrine discussed above, from immediate consideration and allow the Court to proceed expeditiously and narrowly on those issues related to the patent claims. *Edwards Vacuum*, 556 F. Supp. 3d at 1180 ("Whether [Plaintiff's] trade secret claims are objectively baseless [to refute a *Noerr-Pennington* defense] may be informed by the jury's verdict on those claims, or possibly even by the Court's ruling on a motion for summary judgment."); *see also Hydranautics v. Filmtec Corp*., 70 F.3d 533, 536 (9th Cir. 1995) ("If the plaintiff wins the patent infringement suit, then the antitrust counterclaim may ordinarily be disposed of expeditiously on motion, instead of by a time consuming and expensive trial.")

Second, bifurcation will reduce the risk of jury confusion. NLV's antitrust claims will require both sides to present highly complicated factual and economic evidence, the assessment of which would "pose a difficult task for even the most astute of juries," particularly when presented simultaneously with patent infringement evidence. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, 2010 WL 925864, at *1 (D. Del. March 11, 2010) at *2 (bifurcating antitrust claims that would require the jury to consider the alleged relevant markets, actual and potential shares in those markets, barriers to entry, the terms of the party's contracts and whether those contracts violated antitrust laws, antitrust damages, and other antitrust considerations). *Fitbit* is instructive as it involved similar antitrust counterclaims of monopolization. The Court there granted bifurcation and a stay finding that "separation simplifies issues, reduces jury confusion, and helps courts manage the volume and complexity of evidence presented to the jury." *Fitbit.*, 2016 WL 7888033 at *1 (citing *Baldwin Hardware Corp. v. Franksu Enter. Corp.*, No. CV-90-4919-WDK, 1990 WL 357312, at *2 (C.D. Cal. Dec. 28, 1990) ("[S]eparating complex antitrust issues of market power and monopoly from patent, unfair competition and trade dress issues would reduce the likelihood of jury confusion and

23

1    result in an earlier resolution of the issues in dispute.")).

2        Third, bifurcation is warranted to reduce any potential prejudice to Smoore.

3    *See Michael Kors, L.L.C.,* 2017 WL 5665003 at *1 (bifurcation necessary to "avoid

4    prejudice to the parties"). NLV's suggestion, which Smoore vehemently denies, that

5    Smoore engaged in anticompetitive or monopolistic conduct including an alleged

6    "conspiracy" to restrain trade and claims of a "sham litigation" or fraud related to a

7    patent (especially a patent not even at issue in this matter) will significantly and

8    unfairly impact the jury's neutral evaluation of the purely technical questions related

9    to the whether NLV infringed the patents at issue here. In particular, NLV's

10   inclusion of unsupported and irrelevant allegations regarding the '623 Patent in its

11   counterclaims when that patent is not at issue in this litigation confirms NLVs intent

12   to distract and improperly prejudice the jury with its own made-up and

13   inflammatory sideshow regarding the history of the '623 Patent.[7] Bifurcating the

14   patent claims and antitrust counterclaims will avoid this improper and prejudicial

15   result.

16       **C. A Stay of the Antitrust Counterclaims is also Warranted.**

17       The Court should stay the antitrust counterclaims pending resolution of the

18   patent claims. *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH,

19   2006 WL 13058, at *13 (N.D. Cal. Jan. 3, 2006) ("It is a common practice in federal

20   court to stay antitrust counterclaims until after the trial of the invalidity issue."); *see*

21   *also Fitbit*, 2016 WL 7888033 at *1.

22       The extreme burden and expense involved in antitrust fact and expert

23   discovery and litigation of other issues unique to the antitrust claims weigh heavily

24   _____

25   [7] Contrary to NLV's conclusory allegations, the ITC ALJ did not find any "fraud"
     by Smoore regarding the '623 Patent nor any knowledge on Smoore's part that the
26   patent might be unenforceable. Rather, the Initial Determination highlighted that a
     lone employee sought out the '623 Patent application based on his independent
27   research, had his wife's company acquire it, and then over four years later sold the
28   patent to Smoore at a substantial profit. ITC ID at 90-92; Koons Decl. ¶ 3.

in favor of a stay of these counterclaims. *See Twombly*, 550 U.S. at 546 (cautioning not "to forget that proceeding to antitrust discovery can be expensive"). As noted above, NLV has already served a bevy of antitrust discovery requests that perfectly illustrate this concern, seeking virtually all of Smoore's business documents and data related to cannabis vaping products over nearly an entire ***decade***. *See* Koons Decl. ¶ 4. The risk of expending these funds and effort is especially problematic in this context when this burden may not even be necessary or, at a minimum, could be greatly streamlined, depending on the outcome of the initial patent claims. *Chip-Mender*, 2006 WL 13058, at *13 ("Proceeding on the antitrust claims simultaneously with the patent claims may delay resolution of the case by increasing its complexity, whereas many issues will likely be mooted by addressing the patent claims first."); *see also Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013) (granting bifurcation and a stay given "the likelihood of streamlining discovery for and adjudication of the antitrust counterclaims based on the outcome of [Plaintiff's] claims—even if those counterclaims must ultimately proceed").

## VI.    CONCLUSION

For the reasons stated above, NLV's antitrust and patent counterclaims should be dismissed and its and A&A's affirmative defenses stricken. Because no amount of amending can overcome the defects of NLV's pleading, the Court should dismiss the counterclaims with prejudice. In the alternative, the Court should bifurcate any remaining antitrust counterclaims and stay discovery on those counterclaims.

Dated:  September 13, 2024                     Baker Botts L.L.P.


By: /s/  *Theodore W. Chandler*
Theodore W. Chandler (Bar No. 219456)
ted.chandler@bakerbotts.com
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:     (213) 202-5702
Facsimile:     (213) 202-5732

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert L. Maier (Pro Hac Vice)
 robert.maier@bakerbotts.com
Kiyotoki Natsume (Pro Hac Vice)
 thomas.natsume@bakerbotts.com
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone:     (213) 202-5702
Facsimile:     (213) 202-5732

Chao "Wendy" Wang (Bar. No. 289325)
 wendy.wang@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Rd, Bldg. One, Ste 200
Palo Alto, California 94303
Telephone:     (650) 739-7514
Facsimile:     (650) 739-7614

Erik T. Koons (Pro Hac Vice)
 erik.koons@bakerbotts.com
Evan J. Werbel (Pro Hac Vice
Forthcoming)
 evan.werbel@bakerbotts.com
Thomas E. Carter (Pro Hac Vice
Forthcoming)
 tom.carter@bakerbotts.com
Kristin M. Barkemeyer (Pro Hac Vice
Forthcoming)
 kristin.barkemeyer@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Telephone:     (202) 639-7700
Facsimile:     (202) 639-7890

*Attorneys for Plaintiff Shenzhen Smoore Technology Co. Ltd.*

COUNTERCL.-DEF'S MOT. TO DISMISS COUNTERCLS., STRIKE
DEFENSES, OR STAY AND BIFURCATE ANTITRUST COUNTERCLS.
No. 2:22-cv-07646-AB-AGR