1   Theodore W. Chandler (Bar No. 219456)
        ted.chandler@bakerbotts.com
2   BAKER BOTTS L.L.P.
    1801 Century Park East, Suite 2400
3   Los Angeles, California 90067
    Telephone:   (213) 202-5702
4   Facsimile:   (213) 202-5732

5
6   [*Additional Counsel on Signature Page*]

7   *Attorneys for Plaintiff and Counterclaim-*
    *Defendant Shenzhen Smoore Technology*
8   *Co., Ltd.*

9
                    UNITED STATES DISTRICT COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                        WESTERN DIVISION
12

13
                                          Case No.: 2:22-cv-07646-AB-AGR
14  SHENZHEN SMOORE
    TECHNOLOGY CO., LTD.,                 **COUNTERCLAIM-**
15                                        **DEFENDANT'S NOTICE OF**
                *Plaintiff*,              **MOTION TO BIFURCATE AND**
16                                        **STAY ANTITRUST**
            v.                            **COUNTERCLAIMS OR, IN THE**
17                                        **ALTERNATIVE, TO DISMISS**
    NEXT LEVEL VENTURES, LLC and          **COUNTERCLAIM-PLAINTIFF'S**
18  ADVANCED VAPOR DEVICES LLC,           **AMENDED COUNTERCLAIMS**
                                          **AND STRIKE AFFIRMATIVE**
19              *Defendants*.             **DEFENSES; MEMORANDUM**
                                          **OF POINTS AND AUTHORITIES**
20
    NEXT LEVEL VENTURES, LLC,             Date:     Dec. 6, 2024
21                                        Time:     10 a.m.
                *Counterclaim-Plaintiff*,           Courtroom 7B
22                                        Judge:    Hon. André Birotte Jr.
            v.
23
    SHENZHEN SMOORE
24  TECHNOLOGY CO., LTD.,

25              *Counterclaim-Defendant*.

26
27
28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that at the above time and place, Counterclaim-Defendant Shenzhen Smoore Technology Co. Ltd. ("Smoore") will and hereby does move this Court under Federal Rule of Civil Procedure 42(b) to bifurcate and stay discovery regarding Counterclaim-Plaintiff Next Level Ventures, LLC's ("NLV") antitrust counterclaims, or in the alternative to dismiss NLV's amended counterclaims for failure to state a claim upon which relief can be granted and strike NLV's amended affirmative defenses under Federal Rule of Civil Procedure 12(b)(6). Counterclaim-Defendant's motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Proposed Order, and reply brief filed, and any arguments presented at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 14, 2024.

Dated: October 22, 2024                    Baker Botts L.L.P.


                                           By: /s/ *Theodore W. Chandler*
                                           Theodore W. Chandler (Bar No. 219456)
                                              ted.chandler@bakerbotts.com
                                           BAKER BOTTS L.L.P.
                                           1801 Century Park East, Suite 2400
                                           Los Angeles, CA 90067
                                           Telephone:    (213) 202-5702
                                           Facsimile:    (213) 202-5732

                                           Robert L. Maier (*Pro Hac Vice*)
                                              robert.maier@bakerbotts.com
                                           Kiyotoki "Thomas" Natsume (*Pro Hac Vice*)
                                              thomas.natsume@bakerbotts.com
                                           BAKER BOTTS L.L.P.
                                           30 Rockefeller Plaza
                                           New York, NY 10112
                                           Telephone:    (213) 202-5702
                                           Facsimile:    (213) 202-5732

                                           Chao "Wendy" Wang (Bar. No. 289325)
                                              wendy.wang@bakerbotts.com
                                           BAKER BOTTS L.L.P.
                                           1001 Page Mill Rd, Bldg. One, Ste 200
                                           Palo Alto, California 94303

i

Telephone:     (650) 739-7514
Facsimile:      (650) 739-7614

Erik T. Koons (*Pro Hac Vice*)
   erik.koons@bakerbotts.com
Evan J. Werbel (*Pro Hac Vice*)
   evan.werbel@bakerbotts.com
Thomas E. Carter (*Pro Hac Vice*)
   tom.carter@bakerbotts.com
Kristin M. Barkemeyer (*Pro Hac Vice*)
   kristin.barkemeyer@bakerbotts.com
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Telephone:     (202) 639-7700
Facsimile:      (202) 639-7890

*Attorneys for Plaintiff and Counterclaim-Defendant Shenzhen Smoore Technology Co., Ltd.*

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT .......................................................................1

II.   THE COURT SHOULD BIFURCATE AND STAY THE ANTITRUST
      COUNTERCLAIMS PENDING RESOLUTION OF THE PATENT
      CLAIMS .........................................................................................................3

      A.    Legal Standard for Bifurcation and Stay .................................................4

      B.    Bifurcation of the Antitrust Counterclaims is Warranted. .....................5

      C.    A Stay of the Antitrust Counterclaims is also Warranted.......................8

III.  IN THE ALTERNATIVE, NLV'S COUNTERCLAIMS SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM ...................................9

      A.    Legal Standard for Dismissal Under Rule 12(b)(6)...............................9

      B.    NLV Fails to Allege a Viable Relevant Market, as Required for All of
            Its Antitrust Claims ..............................................................................10

      C.    NLV's Allegations of Anticompetitive Contracts Between Smoore and
            Its Distributors Fail to State a Claim....................................................11

            1.    NLV Cannot Suffer Antitrust Injury from Any Alleged
                  Conspiracy to Inflate Prices.........................................................11

            2.    NLV Fails to Allege the "Substantial Foreclosure" Required for
                  Exclusive Dealing Claims Under the Sherman Act. ..................12

                  a.    NLV's Allegations Fail to Plausibly Show That It Was
                        Foreclosed from a "Substantial" Portion of Any Market. 12

                  b.    NLV's Allegations Ignore Self-Distribution Realities.....14

      D.    NLV's Claims that Smoore's Enforcement of its Patents is
            Anticompetitive Are Barred by *Noerr-Pennington* Immunity. ...........15

            1.    NLV Fails to State a Claim that Smoore's Patent Claims
                  Constitute "Sham Litigation" ......................................................17

                  a.    NLV Does Not Plausibly Allege that Smoore's U.S. Patent
                        Enforcement Efforts Are Objectively Meritless ..............17

iii

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

          b.     NLV's Allegations Regarding Smoore's Enforcement Efforts in China Fail to State a Claim ............................. 19

    2.    NLV's Allegations of Intentional "Misrepresentations" and "Knowingly Fraudulent" Statements Cannot Defeat *Noerr-Pennington* Immunity. .................................................... 20

    3.    NLV Cannot Demonstrate a "Policy" or "Pattern" of Allegedly Baseless Suits. .............................................................. 21

E.    NLV Fails to Plausibly Allege a "Dangerous Probability" of Monopolization ....................................................... 22

F.    NLV's California Cartwright Act Claim Fails for the Same Reasons as its Sherman Act Claims.................................................... 23

G.    NLV's Patent Counterclaim Should Be Dismissed. ............................. 24

H.    NLV's AFFIRMATIVE DEFENSES SHOULD BE STRICKEN OR DISMISSED................................................................ 24

IV.    CONCLUSION ....................................................... 25

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998) ................................................................. 13

*Applied Med. Res. Corp. v. Ethicon, Inc.*,
    No. SA-CV-031329-JVS-MLGx, 2006 WL 1381697 (C.D. Cal.
    Feb. 3, 2006) ........................................................................................ 13

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ........................................................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 9

*Atl. Richfield Co. v. USA Petrol. Co.*,
    495 U.S. 328 (1990) ............................................................................. 12

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
    2009 WL 8727693 (C.D. Cal. Feb. 17, 2009) ...................... 17, 20, 21

*Baldwin Hardware Corp. v. Franksu Enter. Corp.*,
    No. CV-90-4919-WDK, 1990 WL 357312 (C.D. Cal. Dec. 28, 1990) .............. 7

*Barnes v. JFK Mem'l Hosp., Inc.*,
    No. EDCV17681JGBSPX, 2017 WL 7240813
    (C.D. Cal. Aug. 28, 2017) ............................................................ 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 8, 9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ............................................................................. 11

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998) ........................................................... 16

*Cellular Plus, Inc. v. Super. Ct.*,
    14 Cal. App. 4th 1224 (1993) ............................................................. 24

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
    No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006)...........................8

*Colonial Med. Grp., Inc. v. Cath. Health Care W.*,
    444 F. App'x 937 (9th Cir. 2011)....................................................................10

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)....................................................................................24

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013)...............................................................8

*Dairy, LLC v. Milk Moovement, Inc.*,
    No. 2:21-cv-02233 WBS AC, 2022 WL 4387981 (E.D. Cal. Sept. 22, 2022)..16

*Eastman v. Quest Diagnostics Inc.*,
    724 F. App'x 556 (9th Cir. 2018)....................................................................12

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
    556 F. Supp. 3d 1156 (D. Or. 2021)..........................................................4, 5, 6

*Fitbit, Inc. v. Aliphcom*,
    No. 5:15-CV-04073-EJD, 2016 WL 7888033 (N.D. Cal. May 27, 2016)...4, 7, 8

*FLAA v. Hollywood Foreign Press Ass'n*,
    55 F.4th 680 (9th Cir. 2022)...........................................................................14

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020)..........................................................................10

*FutureLogic, Inc. v. TransAct Techs., Inc.*,
    No. CV 05-03754 MMM, 2007 WL 9700696 (C.D. Cal. Oct. 30, 2007)..........16

*Gammel v. Hewlett-Packard Co.*,
    No. SACV 11-1404 AG RNBX, 2013 WL 1947525
    (C.D. Cal. May 8, 2013)............................................................................3, 14

*GT Beverage Co. v. Coca Cola Co.*,
    No. SACV 10-00209-JVS, 2010 WL 11595832 (C.D. Cal. Aug. 2, 2010).......19

*Hydranautics v. Filmtec Corp.*,
    70 F.3d 533 (9th Cir. 1995).............................................................................6

vi

*In re Innotrol Diagnostics*,
   800 F.2d 1077 (Fed. Cir. 1986) ........................................................... 4

*Kottle v. Nw. Kidney Ctrs.*,
   146 F.3d 1036 (9th Cir. 1998) .................................................... 16, 22

*Loctite Corp. v. Ultraseal Ltd.*,
   781 F.2d 861 (Fed. Cir. 1985) ........................................................ 16

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
   No. 09-80, 2010 WL 925864 (D. Del. March 11, 2010) ...................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................... 12

*MedImmune, Inc. v. Genentech, Inc.*,
   No. CV 03-2567 MRP, 2003 WL 25550611 (C.D. Cal. Dec. 23, 2003) ........... 21

*Michael Kors, L.L.C. v. Chunma USA, Inc.*,
   No. CV 16-01271-AB (AFM), 2017 WL 5665003
   (C.D. Cal. Aug. 30, 2017) .......................................................... 4, 7

*Morning Star Packing Co. v. SK Foods, L.P.*,
   No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459
   (E.D. Cal. June 14, 2017) .............................................................. 12

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) .................................................... 17

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018) ...................................................................... 10

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ................................................. 13, 15

*Omni Res. Dev. Corp. v. Conoco, Inc.*,
   739 F.2d 1412 (9th Cir. 1984) ...................................................... 20

*Or. Nat. Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991) ................................................... 18, 21

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
   No. SACV 12-2102-JST ANX, 2013 WL 3936394
   (C.D. Cal. July 30, 2013) .................................................... 9, 13, 15

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................16, 19

*Proxyconn Inc. v. Microsoft Corp.*,
    No. SACV 11-1681 DOC ANX, 2012 WL 1835680
    (C.D. Cal. May 16, 2012) .......................................................................24

*Rock River Commc'ns, Inc. v. Universal Music Grp.*,
    No. CV-080635-CAS-AJWx, 2008 WL 11338096
    (C.D. Cal. Aug. 25, 2008) .......................................................................23

*Roland Corp. v. Inmusicbrands, Inc.*,
    No. 2:16-cv-06256-DBM-AJWx, 2017 WL 513924
    (C.D. Cal. Jan. 26, 2017) .......................................................................25

*S. Cal. Elec. Firm v. S. Cal. Edison Co.*,
    668 F. Supp. 3d 1000 (C.D. Cal. 2023) .........................................10, 11

*Sabry Lee, Inc. v. Genera Corp.*,
    No. CV 08-5758-GW(PJWX), 2009 WL 10674318
    (C.D. Cal. Feb. 12, 2009) .......................................................................23

*Sidibe v. Sutter Health*,
    No. 12-cv-04854-LB, 2021 WL 879875 (N.D. Cal. Mar. 9, 2021) ..................23

*Sloan Valve Co. v. Zurn Indus., Inc.*,
    712 F. Supp. 2d 743 (N.D. Ill. 2010).........................................................25

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022).......................................................24

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ..............................................................17, 18, 21

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 477 (1993) .......................................................................22

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .......................................................................9

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
    No. SA-CV-15246-JLS-DFMx, 2015 WL 4545187 (C.D. Cal. July 8, 2015) ..22

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) .................................................................................... 20

*Voda v. Corvis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) .................................................................................. 20

*Vogel v. Huntington Oaks Del. Partners, LLC*,
    291 F.R.D. 438 (C.D. Cal. 2013) ............................................................................. 25

*Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am.*,
    No. 1:19-cv-00416-LJO-SKO, 2020 WL 91998 (E.D. Cal. Jan. 8, 2020)... 17, 18

**STATUTES & RULES**

15 U.S.C. § 6a(1)(A) ................................................................................................... 20

35 U.S.C. § 285 ........................................................................................................... 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2, 9

Fed. R. Civ. P. 12(f) ................................................................................................... 24

Fed. R. Civ. P. 42(b) .................................................................................................... 4

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     PRELIMINARY STATEMENT

Plaintiff and Counterclaim-Defendant Shenzhen Smoore Technology Co. Ltd. ("Smoore") brought this lawsuit to enforce several patents related to components used in the manufacture of vaping systems. Seeking to gain leverage rather than defend on the merits, defendant Next Level Ventures, LLC ("NLV") launched clumsy antitrust counterclaims that faltered in every respect. Rather than respond to Smoore's first motion to dismiss, NLV went back to the drawing board to amend its counterclaims—yet *still* puts forward claims that fail under well-established First Amendment principles and black-letter Supreme Court precedent.

While NLV's amended counterclaims fail across the board, they first and foremost confirm that the Court should bifurcate these antitrust issues from the already complex patent issues, and stay discovery, as has become the common practice in federal courts. NLV's amended antitrust counterclaims implicate a smorgasbord of legal issues that would massively complicate this litigation and endanger the speedy and just resolution of the patent claims at the heart of this case. To name just a few, proceeding on NLV's counterclaims will require analysis of competing interests at the intersection of antitrust and First Amendment law; cross-border issues of comity and the propriety of assessing the legitimacy and merits of foreign patent proceedings; and detailed market analysis to assess the scope of competitive products and the parties' roles in that market. As detailed in the Joint Rule 26(f) report, bifurcation would streamline the case and result in (1) an earlier trial date, and (2) roughly half the trial days needed. *See* ECF No. 55 at 34, 25-26.

As the Court has already recognized, the core patent claims standing alone present "numerous complicated issues," including but not limited to five patents, disputed claim terms, and an extensive ITC record. ECF No. 68 at 4. This complexity led the Court to appoint a special master under Rule 53. ECF No. 79. Attempting to resolve both the patent and the antitrust claims at once will

1  result in a discovery quagmire, unnecessary expense, inevitable jury confusion, and

2  prejudice to Smoore—serious harms that can be avoided by bifurcating and staying

3  NLV's antitrust counterclaims. The delay caused by NLV's choice to amend, rather

4  than defend, its antitrust counterclaims further spotlights the need to stay discovery

5  on those counterclaims until all patent claims are resolved, given the already-

6  voluminous discovery requests propounded by NLV on antitrust issues. For

7  example, a finding that Smoore's patent claims are meritorious would conclusively

8  resolve NLV's allegations that those claims are a "sham," immediately streamlining

9  the case and avoiding waste of judicial and party resources.

10      Should the Court conclude that NLV's antitrust counterclaims will be

11  litigated now, those claims are subject to dismissal under Rule 12(b)(6). First, NLV

12  has now pled a *different* relevant product market—"closed cannabis oil vaporizer

13  systems and components"—that is still legally deficient because it improperly lumps

14  together numerous components that are in no way interchangeable and conflates

15  multiple levels of the distribution chain. Without a viable market definition, all of

16  NLV's antitrust counterclaims must be dismissed. (Counts III-VI.)

17      Second, NLV's complaints of a "conspiracy" between Smoore and its

18  distributors to inflate prices ring hollow because the Supreme Court has

19  unequivocally held that competitors like NLV only stand to gain from such

20  behavior, and cannot suffer antitrust injury from it as a matter of law.

21      Third, NLV's arguments that it has been "substantially foreclosed" from the

22  relevant market are also contradicted by the counterclaims. NLV concedes that

23  Smoore's market position and profits have precipitously **declined**, that Smoore's

24  "rapid decline in fortunes" started "around 2018 or 2019," and that "[e]ven as the

25  market for cannabis vaporizers was growing, with sales as much as doubling

26  between 2020 and 2022, Smoore's market share [quickly] began to erode" by at

27

28

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

least 20 to 30 percent.[1] ECF No. 64, NLV Am. Answer & Countercl. ("AA&C")
¶¶ 32-36; 103, 119. NLV's allegations that Smoore has ceded substantial market
share **to NLV** and other "upstart American competitors" at increasing rates since
2018, A&C ¶ 29, refutes any notion that Smoore can "substantially foreclose" NLV
or any competitor from the alleged market. The law is clear: NLV needs to show an
enduring barrier to meaningful competition, and its allegations fall far short of that.

Fourth, NLV's counterclaims that Smoore's patent enforcement efforts are
anticompetitive also fail as a matter of law. (Counts IV, V, VI.) These claims are
categorically barred by the First Amendment and *Noerr-Pennington* immunity.
NLV's allegations that Smoore has engaged in "sham litigation," based in large part
on the '623 patent that is not even at issue here, ongoing Chinese patent litigation
against a third party that Smoore has twice won, and the present litigation, fall far
short of satisfying any of the narrow exceptions to *Noerr-Pennington* immunity.

Finally, NLV's induced infringement counterclaim still does not plead the
requisite knowledge, and its affirmative defenses are deficiently pled.

## II.  THE COURT SHOULD BIFURCATE AND STAY THE ANTITRUST COUNTERCLAIMS PENDING RESOLUTION OF THE PATENT CLAIMS

The Court repeatedly recognized the complexity of this matter at the
Scheduling Conference held on September 27, 2024, and in its Order Appointing
Special Master (ECF No. 79). That complexity stems not only from what the Court
has described as "the numerous complicated issues presented" by the patent issues,
but also from NLV's similarly complex antitrust counterclaims (even as amended).
Bifurcating and staying the antitrust claims will simplify the issues before the Court

---

[1] NLV's amendments to its counterclaims excise the word "quickly" from this
sentence without explanation, but the original wording of NLV's counterclaims
"may [be] consider[ed] . . . in determining the *plausibility* of the current pleadings."
*Gammel v. Hewlett-Packard Co.*, No. SACV 11-1404 AG RNBX, 2013 WL
1947525, at *5 (C.D. Cal. May 8, 2013) (citations omitted).

and expedite resolution of the patent claims, allow the Court and the jury to focus on the central patent issues without confusion from antitrust issues, and prevent unfair prejudice to Smoore. In fact, as detailed in the parties' Joint Rule 26(f) report, bifurcation and a focus on the patent case will result in (1) an earlier trial date, and (2) roughly half the trial days needed. *See* ECF No. 55 at 34, 25-26. Moreover, bifurcating and staying the antitrust counterclaims—purely a defensive measure in this patent suit—may well eliminate altogether the need for the Court, the parties and a potential jury to address the antitrust claims.

### A. Legal Standard for Bifurcation and Stay

Under Federal Rule of Civil Procedure 42(b), courts have broad discretion to try claims separately to "increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Michael Kors, L.L.C. v. Chunma USA, Inc.*, No. CV 16-01271-AB (AFM), 2017 WL 5665003 at *1 (C.D. Cal. Aug. 30, 2017) (Birotte, J.) (bifurcating liability and damages in trademark matter). Regarding antitrust counterclaims in patent matters, "[s]o many cases have granted motions to bifurcate patent-related antitrust claims from infringement claims, that even the Federal Circuit has commented that granting bifurcation is 'now-standard practice.'" 6 ANPATDIG § 39:100 (June 2023 Update) (quoting *In re Innotrol Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)). Also, when addressing antitrust counterclaims in patent matters, "district courts often stay an antitrust counterclaim until the issues of patent infringement and validity are resolved." *Fitbit, Inc. v. Aliphcom*, No. 5:15-CV-04073-EJD, 2016 WL 7888033, at *1 (N.D. Cal. May 27, 2016). Bifurcation and a stay of antitrust counterclaims are specifically warranted when the resolution of the initial patent claims would "inform[]" a determination of whether a counterclaimants allegations that those initial patent claims were a "sham." *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1180 (D. Or. 2021).

**B. Bifurcation of the Antitrust Counterclaims is Warranted.**

The vast complexity and scope of the issues in this case, already acknowledged by the Court, mandates bifurcation of the antitrust issues. Bifurcation is required here: (1) to promote judicial economy by expediting the resolution of the patent claims, which might eliminate the need for ever addressing the antitrust counterclaims and avoid potentially unnecessary discovery expense; (2) to reduce the risk of confusing the jury while simplifying the complex evidence and issues; and (3) to avoid potential prejudice to Smoore from the presentation of irrelevant and inflammatory evidence that might improperly impact the jury.

First, bifurcation of the antitrust claims will conserve both judicial and party resources and promote efficiency. *Edwards Vacuum*, 556 F. Supp. 3d at 1180 ("Bifurcation allows for (1) quicker resolution of the intellectual property infringement issue as there is less discovery required, and (2) judicial economy as the antitrust and unfair competition claims may not have to be heard if intellectual property infringement is proved in the first trial.") (internal alterations omitted). As the Court recently noted, the five patent claims alone raise numerous complex issues and warrant the appointment of a Special Master. ECF No. 68 at 4 ("the Court will have to decide how to approach claim construction and potentially case narrowing given the number of patents; the Court will then need to construe the disputed claim terms; there is ITC history to consider; besides infringement and validity, the Joint Report raises other patent issues (*e.g.*, prosecution history estoppel, damages marking issues); and there are potential third party liability issues, among others."). The antitrust counterclaims will only delay and further complicate the resolution of these issues, even with the appointment of Special Master.

Resolution of NLV's antitrust counterclaims and related motions practice and discovery disputes may never be necessary, or their scope will at least be significantly narrowed, if the patent claims are first resolved in Smoore's favor. For example, if the jury finds that Smoore's patents are valid, that would mean that

5

Smoore's patent case was justified and likely lead to the dismissal of NLV's "sham" counterclaims. *Edwards Vacuum*, 556 F. Supp. 3d at 1180 ("discovery on the subjective prong of the issue of sham litigation will be both expensive and intrusive—and completely unnecessary if the objective prong is not satisfied").

Bifurcation could also eliminate the need for expensive antitrust fact and expert discovery. Here, the antitrust counterclaims will require resolution of a myriad of issues that are unconnected to the patent claims, including industry practices related to exclusivity and distribution agreements, market foreclosure, potential business justifications for certain conduct, antitrust causation and antitrust injury. The arguments laid out in Smoore's motion to dismiss, *see infra* Section III, offer a small preview of these issues, but proceeding beyond the pleadings to discovery on the merits will see the complexity increase by orders of magnitude.

Indeed, NLV has already served approximately 60 expansive requests for production on antitrust issues, seeking documents from the last ten years related to Smoore's manufacturing, marketing, distribution, sales, pricing, business strategy, market analysis, communications with other industry players, and many other topics. *See* Koons Decl. ¶ 4. Bifurcating the antitrust counterclaims will remove these complex tangents, as well as the extensive issues related to the *Noerr-Pennington* doctrine, allegations of sham litigation and First Amendment immunity for Smoore's prior enforcement efforts discussed below, *see infra* Section III.D., from immediate consideration and allow the Court to proceed expeditiously and narrowly on those issues related to the patent claims. *Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) ("If the plaintiff wins the patent infringement suit, then the antitrust counterclaim may ordinarily be disposed of expeditiously on motion, instead of by a time consuming and expensive trial.")

Second, bifurcation will reduce the risk of jury confusion. NLV's antitrust claims pile a myriad of unrelated issues onto the already-complex patent issues and will require both sides to present highly complicated factual and economic evidence,

6

1  the assessment of which would "pose a difficult task for even the most astute of

2  juries," particularly when presented simultaneously with patent infringement

3  evidence. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, 2010 WL 925864,

4  at *1 (D. Del. March 11, 2010) at *2 (bifurcating and staying antitrust claims that

5  would require the jury to consider the alleged relevant markets, actual and potential

6  shares in those markets, barriers to entry, the detailed terms of the party's contracts

7  and whether those contracts violated antitrust laws, antitrust damages, and other

8  antitrust issues).

9       *Fitbit* is instructive, as it involved similar counterclaims. The Court there

10  bifurcated and stayed, finding that "separation simplifies issues, reduces jury

11  confusion, and helps courts manage the volume and complexity of evidence

12  presented to the jury." *Fitbit*, 2016 WL 7888033 at *1 (citing *Baldwin Hardware*

13  *Corp. v. Franksu Enter. Corp.*, No. CV-90-4919-WDK, 1990 WL 357312, at *2

14  (C.D. Cal. Dec. 28, 1990) ("[S]eparating complex antitrust issues of market power

15  and monopoly from patent, unfair competition and trade dress issues would reduce

16  the likelihood of jury confusion and result in an earlier resolution of the issues [].")).

17       Third, bifurcation is warranted to avoid prejudice to Smoore. *See Michael*

18  *Kors, L.L.C.,* 2017 WL 5665003 at *1. NLV's suggestion—which Smoore

19  vehemently denies—that Smoore engaged in anticompetitive conduct, including an

20  alleged "conspiracy" to restrain trade, claims of a "sham litigation," or fraud related

21  to a patent (especially one not even at issue), will significantly and unfairly impact

22  the jury's evaluation of the purely technical question of whether NLV infringed the

23  patents at issue. In particular, NLV's irrelevant allegations regarding the '623

24  Patent, which is not even asserted here, confirms NLVs' intent to distract and

25  prejudice the jury with an inflammatory sideshow.[2] Bifurcating the patent claims

26      _____

27  [2] Despite being alerted to this inaccurate claim by Smoore's initial motion to
dismiss, NLV's amended counterclaims continue to improperly suggest that the ITC

28  ALJ found "fraud" by Smoore regarding the '623 Patent. *See* AA&C ¶¶ 41, 47. That

and antitrust counterclaims will avoid this improper and prejudicial result.

### C. A Stay of the Antitrust Counterclaims is also Warranted.

NLV's tactic of amending its counterclaims rather than responding to Smoore's initial motion only resulted in further delay, and confirms the need for a stay of all discovery related to the antitrust issues. NLV's expansive antitrust discovery requests strongly favor a stay. Such burdensome and potentially unnecessary discovery is why "[i]t is a common practice in federal court to stay antitrust counterclaims until after the trial of the invalidity issue." *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058, at *13 (N.D. Cal. Jan. 3, 2006); *see also Fitbit*, 2016 WL 7888033 at *1.

The extreme burden and expense involved in antitrust fact and expert discovery and litigation of other issues unique to the antitrust claims weigh heavily in favor of a stay of these counterclaims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (cautioning not "to forget that proceeding to antitrust discovery can be expensive"). NLV's outstanding antitrust discovery requests perfectly illustrate this concern, seeking virtually all of Smoore's business documents and data related to cannabis vaping products over nearly an entire *decade*. *See* Koons Decl. ¶ 4.

Incurring this extraordinary effort and expense is especially problematic here when this burden may not even be necessary, or at a minimum could be greatly streamlined, depending on the outcome of the initial patent claims. *Chip-Mender*, 2006 WL 13058, at *13 ("Proceeding on the antitrust claims simultaneously with the patent claims may delay resolution of the case by increasing its complexity, whereas many issues will likely be mooted by addressing the patent claims first."); *see also Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013)

---

is not the case. Rather, the Initial Determination highlighted that a lone employee sought out the '623 Patent application based on his independent research, had his wife's company acquire it, and then over four years later sold the patent to Smoore at a substantial profit. ITC ID at 90-92; Koons Decl. ¶ 3.

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

(granting bifurcation and a stay given "the likelihood of streamlining discovery for
and adjudication of the antitrust counterclaims based on the outcome of [Plaintiff's]
claims—even if those counterclaims must ultimately proceed").

## III.    IN THE ALTERNATIVE, NLV'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Should NLV's antitrust counterclaims not be bifurcated and stayed, they
should be dismissed under Rule 12(b)(6). NLV fails to plausibly state a claim for
relief with its allegations that Smoore (1) has restrained competition in or
monopolized a relevant market for "closed cannabis oil vaporizer systems and
components," (2) used anticompetitive distribution agreements in distributing its
products, (3) has enforced its patents through anticompetitive litigation, (4) has a
dangerous probability of monopolizing any relevant market, (5) has violated the
California Cartwright Act, or (6) is infringing one of NLV's patents.

### A. Legal Standard for Dismissal Under Rule 12(b)(6)

To survive dismissal, a counterclaim must allege sufficient facts beyond the
"speculative," "conceivable," or "possible," and instead must "state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 545, 547, 555, 563, 570, 591; *see
also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It "must (1) 'contain sufficient
allegations of underlying facts to give fair notice and to enable the opposing party to
defend itself effectively,' and (2) 'plausibly suggest an entitlement to relief, such
that it is not unfair to require the opposing party to be subjected to the expense of
discovery and continued litigation.'" *Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
No. SACV 12-2102-JST ANX, 2013 WL 3936394, at *1 (C.D. Cal. July 30, 2013)
(quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Moreover, the
Supreme Court has cautioned against permitting antitrust cases to proceed to
discovery without a plaintiff demonstrating 'plausibility' because of the high cost of
discovery in antitrust cases in particular." *Id.* (citing *Twombly*, 550 U.S. at 558).

### B. NLV Fails to Allege a Viable Relevant Market, as Required for All of Its Antitrust Claims

Defining a relevant product market is a necessary "threshold step in any antitrust case." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). To support a claim for antitrust liability, that market must encompass "the area of effective competition" in order to reliably "measure the defendant's ability to lessen or destroy competition." *Id.* (citing *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018)). "A properly defined product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Colonial Med. Grp., Inc. v. Cath. Health Care W.*, 444 F. App'x 937, 938 (9th Cir. 2011) (internal quotation marks omitted). Failure to meet this standard means "the relevant market is legally insufficient and a motion to dismiss may be granted." *S. Cal. Elec. Firm v. S. Cal. Edison Co.*, 668 F. Supp. 3d 1000, 1014 (C.D. Cal. 2023) (citation omitted).

NLV attempts (but fails) to correct its definition of the relevant product market. Recognizing the failures of its initial pleading, NLV modified its market definition to add "and components" to its prior alleged market of "closed cannabis oil vaporizer systems." AA&C ¶ 9, 88. The "components" that NLV appears to add to its already ill-defined market are the atomizer core/cartridge, the mouthpiece and the battery (*Id.* at ¶ 98) which are separate components sold at various levels of the distribution chain and in various forms.[3] The result is an alleged "market" that disregards the basic requirements of "reasonable interchangeability of use and cross-elasticity of demand," *Colonial Medical Group*, 444 F. App'x at 938, and instead impermissibly lumps together various non-interchangeable components with fully-

---

[3] NLV's allegation that these components are typically "sold . . . in their assembled form" and only "occasionally disassembled in their component parts" is nonsensical. As NLV admits, neither Smoore nor NLV sell devices that already contain cannabis, *see* AA&C ¶ 87, so vaping devices could not be fully assembled until *after* cannabis oil is inserted by the downstream customer.

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

assembled systems that are sold at different points in the supply chain by different sets of competitors. NLV does not allege, nor could it, that (for example) mouthpieces are interchangeable with unfilled cartridges or with rechargeable batteries. NLV's market definition is facially insufficient because it fails to account for this basic lack of substitutability. *See S. Cal. Elec. Firm*, 668 F. Supp. 3d at 1014.

### C. NLV's Allegations of Anticompetitive Contracts Between Smoore and Its Distributors Fail to State a Claim.

NLV's claims that it has been harmed by Smoore's contracts with its distributors fail as a matter of law. *See* AA&C ¶¶ 138-64 (Counts III (conspiracy), IV (monopolization), V (attempted monopolization), and VI (Cal. Cartwright Act)).

#### 1. NLV Cannot Suffer Antitrust Injury from Any Alleged Conspiracy to Inflate Prices.

To state a claim under the Sherman Act, NLV must plausibly allege "antitrust injury." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The injury **must** be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.*

NLV's amended complaint cannot state a plausible claim of antitrust injury from Smoore's allegedly inflated prices under clear Supreme Court precedent. The Supreme Court has held that competitors lack standing to challenge alleged conduct under the Sherman Act that allegedly raises prices or restricts output, because such alleged effects actually *benefit* competitors like NLV:

> Nor can respondents recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, but **it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price** [of the relevant product]. Finally, for the same reason, respondents cannot recover for a conspiracy to impose nonprice restraints that have the effect of either raising market price or limiting output. Such restrictions, though harmful to competition, **actually benefit competitors by making**

11

**supracompetitive pricing more attractive.**

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986) (emphasis added); *see Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 337 (1990) ("A competitor may not complain of conspiracies that set minimum prices at any level."); *Morning Star Packing Co. v. SK Foods, L.P.*, No. 2:09-cv-00208-KJM-EFB, 2017 WL 2572459, at *7 (E.D. Cal. June 14, 2017) (holding that competitors cannot suffer antitrust injury from "an arrangement to sell to a limited number of distributors with a goal of avoiding intragroup competition").

All of NLV's Sherman Act claims based on an alleged agreement between Smoore and its distributors to fix or raise prices, allocate customers, or otherwise limit competition between distributors—which make up the entirety of NLV's Section 1 allegations outside of its claim of exclusive dealing, *see* AA&C ¶¶ 61-64, 66-75, 139-43—thus fail to allege antitrust injury and should be dismissed.

### 2. NLV Fails to Allege the "Substantial Foreclosure" Required for Exclusive Dealing Claims Under the Sherman Act.

Exclusive dealing arrangements violate the Sherman Act only if their "probable effect is to foreclose competition in a **substantial share** of the line of commerce affected."  *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018) (emphasis added, internal citations omitted). NLV fails to state a claim of this required substantial foreclosure because (1) it cannot plausibly allege foreclosure from a relevant market while admitting that Smoore's market share was simultaneously in rapid decline; and (2) it admits that it can self-distribute products by maintaining its own inventory and logistics, defeating any claim of "foreclosure."

#### a. NLV's Allegations Fail to Plausibly Show That It Was Foreclosed from a "Substantial" Portion of Any Market.

Second, NLV fails to plausibly allege facts that would permit an inference of "substantial" foreclosure. Because "[t]here are well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand

competition," a showing of "substantial" foreclosure is necessary to avoid chilling procompetitive conduct. *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997). Courts recognize that foreclosure cannot be substantial if it involves temporary lack of access following unsuccessful "competition for the contract." *See Pro Search*, 2013 WL 3936394, at *2-3 ("Even an exclusive-dealing contract covering a dominant share of a relevant market need have no adverse consequences if the contract is let out for frequent rebidding.") (citation omitted). NLV's claims fail this test, alleging at most "foreclosure" from specific distributors while NLV maintained access to customers through other channels. AA&C ¶¶ 75-78, 29-31.

The antitrust laws do not exist to ensure that NLV can win every opportunity for every distribution relationship in the marketplace. Rather, the "[a]ntitrust laws are designed to protect competition, not competitors." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 951 (9th Cir. 1998). Indeed, battles over exclusive opportunities like the one purportedly created by the Greenlane-KushCo merger, *see* AA&C ¶¶ 76-77, are "a vital form of rivalry, and often the most powerful one, which the antitrust laws encourage rather than suppress." *Applied Med. Res. Corp. v. Ethicon, Inc.*, No. SA-CV-031329-JVS-MLGx, 2006 WL 1381697, at *2 (C.D. Cal. Feb. 3, 2006). With regard to the distributors mentioned by NLV, *see* AA&C ¶ 78, NLV fails to allege anything explaining why it could not compete on the merits to win away those distributors—for example, by offering better pricing or other more enticing terms than Smoore.

The remainder of NLV's allegations amply demonstrate that NLV has not been substantially foreclosed from any market by Smoore. As NLV admits, despite Smoore's early entry into the industry, Smoore has **lost** many customers and ceded much of its early lead as other players have entered the market with competing products. NLV alleges that Smoore went through a "precipitous" loss of market share, losing between 20-30% in a period of less than five years, with Smoore's

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

largest market share losses occurring since 2022.[4] *Id.* ¶¶ 34-35. NLV alleges **no** point at which Smoore has been able to improve its market position at all—at the expense of NLV or any of the other numerous "upstart American competitors" that recently flooded the U.S. market. *Id.* ¶ 34. And during the period of the purported conspiracy, Smoore was alleged to miss its financial targets so dramatically that it was forced to issue warnings to investors in 2023. *Id.* ¶ 119. It defies logic that Smoore could simultaneously be in precipitous decline while substantially foreclosing market share from NLV across the U.S.

NLV admits that Smoore's decline was a direct result of other competitors responding to demand more nimbly in the market and consistently taking business from Smoore by providing a better product to consumers. *Id.* ¶¶ 32-34. In other words, NLV has managed to "plead itself out of court by alleging facts that are inconsistent with its claim." *FLAA v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 692 (9th Cir. 2022) (affirming dismissal of Sherman Act claims). NLV's claims of substantial foreclosure are therefore implausible and should be dismissed.

### b.  NLV's Allegations Ignore Self-Distribution Realities.

NLV's original exclusive dealing counterclaims ignored the reality, recognized elsewhere in its own allegations, of self-distribution as a viable path to market. *See* AA&C ¶ 63 (admitting that self-distribution is used by Smoore). Now NLV doubles down on that failing, plainly admitting in new allegations that it has built its own distribution network to successfully reach customers. AA&C ¶¶ 79-80. Courts recognize that, when a competitor can reach their customers "by employing existing or potential alternate channels of distribution," there is no substantial foreclosure in the relevant market. *See Barnes v. JFK Mem'l Hosp., Inc.*, No.

---

[4] NLV once again attempted to remove self-defeating language from its amended counterclaims, deleting the allegation that "[m]ost of this market share loss did not take place until 2022." But as noted earlier, this excised language is still relevant to assess the plausibility of NLV's allegations. *See Gammel*, 2013 WL 1947525, at *5.

1    EDCV17681JGBSPX, 2017 WL 7240813, at *7 (C.D. Cal. Aug. 28, 2017).

2         Addressing the availability of such alternatives is key to plausibly pleading

3    any claim of substantial foreclosure. *Id.* (citing 2A Areeda, Antitrust Law ¶ 570b1

4    (foreclosure calculation "includes the full range of selling opportunities reasonably

5    open to rivals"). NLV's amended counterclaims now admit that self-distribution is a

6    reality of the market and it is currently utilized by both Smoore and NLV. AA&C

7    ¶¶ 63, 79-80. NLV seeks to recast this fatal admission as evidence of harm by

8    pointing to "significant investments in sales and distribution infrastructure and

9    personnel" that it was "forced" to make. *Id.* ¶ 80. But being "forced" to compete on

10   the merits to reach and win customers does not support a claim of substantial

11   foreclosure—rather, it demonstrates that such efforts are a viable alternative to

12   working with distributors. *See Pro Search*, 2013 WL 3936394, at *4 ("It is inimical

13   to the antitrust laws to award damages for losses stemming from continued

14   competition . . . .") (cleaned up). The question is not whether NLV has access to its

15   (allegedly) most preferred method of reaching customers but whether Smoore's

16   distribution agreements have suppressed effective competition market-wide. NLV's

17   allegations show that competition is vibrant and no such suppression could occur,

18   with NLV "free to sell directly, to develop alternative distributors, or to compete for

19   the services of the existing distributors. Antitrust laws require no more." *Omega*

20   *Env't, Inc. v. Gilbarco, Inc.*,127 F.3d 1157, 1163 (9th Cir. 1997).

21       **D. NLV's Claims that Smoore's Enforcement of its Patents is**
22          **Anticompetitive Are Barred by *Noerr-Pennington* Immunity.**

23       NLV's claim that Smoore is unlawfully excluding competitors by enforcing

24   its patent rights also fails as a matter of law, and NLV's amendments again did

25   nothing to address these failings. *See* AA&C ¶¶ 146-64 (Counts IV

26   (monopolization), V (attempted monopolization), and VI (California Cartwright

27   Act)). Smoore's petitioning of the courts for resolution of its patent infringement

28   claims is protected under the First Amendment and the Supreme Court's *Noerr-*

1    *Pennington* doctrine. *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,

2    508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally

3    immune from antitrust liability."). Those constitutional protections extend equally to

4    all patent enforcement efforts, whether successful or not. "Neither the bringing of an

5    unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls

6    to invalidity, subjects the suitor to antitrust liability." *C.R. Bard, Inc. v. M3 Sys.,*

7    *Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998).

8        Antitrust claims attacking patent enforcement efforts "pose[] a unique risk to

9    the exercise of First Amendment rights" because "the long drawn out process of

10   [antitrust] discovery can be both harassing and expensive." *Dairy, LLC v. Milk*

11   *Moovement, Inc.*, No. 2:21-cv-02233 WBS AC, 2022 WL 4387981, at *3 (E.D. Cal.

12   Sept. 22, 2022). They also seriously risk "chill[ing] legitimate patent enforcement

13   efforts because of the fear of the vexatious or punitive consequences of treble

14   damages suits." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876 (Fed. Cir. 1985).

15   As such, before NLV can weaponize allegations of "sham litigation" against

16   Smoore's rights under the First Amendment and patent law to petition the courts,

17   those allegations should be subject to heightened standards under Ninth and Federal

18   Circuit law. Those standards "require more specific allegations than would

19   otherwise be required," *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1036, 1059 (9th Cir.

20   1998), particularly where fraudulent conduct is alleged. *See FutureLogic, Inc. v.*

21   *TransAct Techs., Inc.*, No. CV 05-03754 MMM (CTx), 2007 WL 9700696, at *7

22   (C.D. Cal. Oct. 30, 2007) (under Federal Circuit standard, claims that *Noerr-*

23   *Pennington* immunity does not apply due to alleged fraud "must be pled with

24   particularity under Rule 9(b) of the Federal Rules of Civil Procedure").

25        The Federal Circuit has recognized only two narrow exceptions to the broad

26   protections of *Noerr-Pennington* immunity.[5] First, a lawsuit may be considered a

27   _____

28   [5] Because issues of *Noerr-Pennington* immunity often arise as part of counterclaims
     to patent infringement lawsuits, the Federal Circuit has held that its own precedent

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR

1   "sham" only if it is both "objectively baseless" and brought with "unlawful"

2   motivation to destroy competition. *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,

3   2009 WL 8727693, at *7 (C.D. Cal. Feb. 17, 2009). Second, a party may lose

4   *Noerr-Pennington* protections if it "commits knowing fraud on a court by making

5   intentional misrepresentations severe enough to deprive the litigation of its

6   legitimacy." *Id.* (internal quotations omitted). Finally, while the Federal Circuit has

7   never "expressly recognize[d]" any other immunity exception, *id.*, the Ninth Circuit

8   has carved out a third exception for a "series of lawsuits" when "brought pursuant to

9   a policy of starting legal proceedings without regard to the merits and for an

10  unlawful purpose." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006).

11      Under the heightened pleading standard applicable here, NLV must plead

12  "**specific allegations** demonstrating that" an exception is met and "the *Noerr-*

13  *Pennington* protections **do not apply**." *Wonderful Real Est. Dev. LLC v. Laborers*

14  *Int'l Union of N. Am.*, No. 1:19-cv-00416-LJO-SKO, 2020 WL 91998, at *7 (E.D.

15  Cal. Jan. 8, 2020) (emphasis added). NLV thus bears the burden. NLV's

16  counterclaims fail to pass muster under both the heightened pleading standard here

17  and the plausibility requirement under *Twombly*, and should be dismissed.

### 1. NLV Fails to State a Claim that Smoore's Patent Claims Constitute "Sham Litigation"

#### a. NLV Does Not Plausibly Allege that Smoore's U.S. Patent Enforcement Efforts Are Objectively Meritless

21      NLV's counterclaims cannot fit within the narrow first "sham litigation"

22  exception to First Amendment immunity. Regarding the ITC proceeding instituted

23  by Smoore, NLV cherry-picks certain findings of the ITC, *see* AA&C ¶¶ 47-50, to

24  implausibly allege that Smoore's patent claims there were wholly lacking in

25  objective merit. In the ITC proceeding, Smoore alleged infringement of three utility

26  _____

27  applies to the question of immunity in that context, while law of the regional circuit
    applies for all other aspects of an antitrust claim. *See Nobelpharma AB v. Implant*

28  *Innovations, Inc.*, 141 F.3d 1059, 1067-68 (Fed. Cir. 1998).

1   patents (the '623 Patent, '762 Patent, and '763 Patent) and one trademark against

2   NLV and others. Most of NLV's sham allegations focus myopically on the '623

3   Patent, claiming that the patent is unenforceable due to an inaccurate statement

4   made by a patent agent (who was not representing Smoore) as part of the application

5   process. But the '623 Patent is ***not*** part of Smoore's claims in the instant lawsuit—

6   and NLV admits as much. *Id.* ¶ 24.[6] NLV has thus pled nothing that could plausibly

7   support a finding that the **current lawsuit** is objectively meritless, as required.

8       In his Initial Determination, the ITC Administrative Law Judge ("ALJ")

9   simply found that Smoore had not provided sufficient evidence to satisfy the ITC's

10  "domestic industry" test—an analysis of a patentee's investments in the U.S.

11  economy related to its claimed patent that is not an element of patent claims in

12  district court. NLV's conclusory allegations that Smoore's arguments to the ITC on

13  the domestic industry test were "improper," "wrongful," and "misrepresentations"

14  twist the findings of the ALJ beyond recognition. The ALJ nowhere applied these

15  pejoratives to Smoore's arguments, finding instead, as a purely evidentiary matter,

16  that some but not all of the U.S. investments and expenses claimed as "domestic

17  industry" by Smoore were cognizable under that doctrine. *See* A&C, Ex. 2 at 95-

18  102. That is run-of-the-mill fact-finding, not an endorsement of NLV's extreme and

19  implausible position that Smoore's claims were **objectively** meritless. And it is

20  wholly insufficient to satisfy NLV's pleading burden where First Amendment rights

21  are at stake.[7] *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (a

---

22  [6] NLV's conclusory and nonsensical allegation that "the real goal of this litigation is

23  to attempt to enforce the much broader rights under the '623 Patent," *id.* ¶ 147, is

24  irrelevant to the objective merit of Smoore's patent claims in this lawsuit on wholly
     separate patents.

25  [7] NLV's claim that Smoore's settlements with other defendants in the ITC

26  proceeding were "exclusionary," see AA&C ¶¶ 51, 56, is equally unavailing. "The
     Ninth Circuit has also recognized that the Noerr-Pennington doctrine protects

27  settlement conduct incidental to the prosecution of the suit." *Wonderful*, 2020 WL

28  91998, at *6 (citing *Sosa*, 437 F.3d at 934-35).

"heightened pleading standard . . . would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party.").

### b. NLV's Allegations Regarding Smoore's Enforcement Efforts in China Fail to State a Claim

NLV's allegations about Smoore's patent claims in China offer no plausible support for the required showing of a lack of objective merit, and cannot support an antitrust claim. NLV improperly asks this Court to decide the validity of foreign patents and alleges no effect on U.S. commerce.

First, as NLV concedes, Smoore's Chinese patent claims were not even asserted against NLV. *See* AA&C ¶ 53. Smoore brought a design patent claim against Naixing, which happened to be an NLV supplier. *Id.*

Second, NLV admits that Smoore **prevailed** at the Shenzhen Intermediate People's Court (the lower court) because Naixing "did not adequately establish its defenses." AA&C ¶ 12. Yet NLV's claims still inexplicably omit that Smoore prevailed **again** at the appellate level in its patent infringement claims against Naixing—even after being called out for that deceptive omission in Smoore's original motion to dismiss. *See* ECF No. 54 at 14; Koons Decl., Ex. A (Decision of the Guangdong High People's Court) at 9-12.[8] "A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Prof'l Real Est. Invs.*, 508 U.S. at 60 n.5.

Third, NLV's claim improperly seeks to extend U.S. antitrust law to attack and relitigate foreign patent proceedings. The Federal Circuit has recognized that U.S. "courts should not determine the validity and infringement of foreign patents," as would be required to assess whether this ***Chinese*** patent proceeding was

---

[8] The Court may take judicial notice of foreign court decisions for purposes of deciding a motion to dismiss when "the facts noticed are not subject to reasonable dispute." *GT Beverage Co. v. Coca Cola Co.*, No. SACV 10-00209-JVS (RNBx), 2010 WL 11595832, at *2 (C.D. Cal. Aug. 2, 2010).

objectively baseless. *Voda v. Corvis Corp.*, 476 F.3d 887, 899 (Fed. Cir. 2007) (recognizing the "independence of each country's sovereign patent systems and their systems for adjudicating those patents"). NLV also alleges nothing about the effect Smoore's Chinese patent claims had on U.S. commerce. This is fatal to NLV's allegations because foreign conduct is actionable only when it has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. 15 U.S.C. § 6a(1)(A). The Supreme Court defines a "direct effect" as one that "follows as an immediate consequence of the defendant's activity." *United States v. LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004). NLV alleges no effect at all from this Chinese litigation against a Chinese supplier, let alone an "immediate" one on the U.S. market. NLV's sham allegations regarding Smoore's Chinese patent litigation must therefore be dismissed.

## 2. NLV's Allegations of Intentional "Misrepresentations" and "Knowingly Fraudulent" Statements Cannot Defeat *Noerr-Pennington* Immunity.

NLV's false and inflammatory allegations regarding "fraudulent" conduct and "misrepresentations" to the ITC and the Chinese court do not satisfy NLV's burden under the second exception to *Noerr-Pennington* immunity—that Smoore allegedly committed "knowing fraud on a court by making intentional misrepresentations severe enough to deprive the litigation of its legitimacy." *Aventis*, 2009 WL 8727693, at *7. This exception requires more than claims that alleged fraud may have influenced a tribunal's decision. *Omni Res. Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (such allegations "can easily be leveled" and are "thus insufficient by [themselves] to overcome *Noerr-Pennington* immunity.").

NLV fails to allege that the ITC action was influenced at all by any alleged misrepresentations by Smoore. Indeed, the ALJ in the ITC action found for NLV after the factual disputes it hyperbolizes into "misrepresentations" were argued before and considered by the ALJ. As such, even if Smoore made any such misrepresentations (it did not), it had zero impact on the outcome of the proceedings

and thus had no impact on NLV. *See MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-2567 MRP, 2003 WL 25550611, at *7 (C.D. Cal. Dec. 23, 2003) (holding that sham claim failed where tribunal "did not rely" on alleged misrepresentation, so party "could not have sustained [any] injury").

NLV's allegations likewise fail with regard to the Chinese patent action. NLV alleges that Naixing has "uncovered evidence" regarding the Chinese litigation that it claims supports Naixing's invalidity defenses. AA&C ¶ 54. But the Chinese appellate court already considered (and rejected as insufficient) the "video from the conference in question" that NLV alleges as proof of misrepresentation, *see id.*, and ruled for Smoore while fully aware of the factual dispute NLV complains of here and despite Naixing's request for an extension to take additional U.S. discovery. *See* Koons Decl., Ex. A at 9, 12. This is yet another example of NLV "simply recast[ing] disputed issues . . . as 'misrepresentations,'" which cannot meet their burden under a heightened pleading standard. *Mohla*, 944 F.2d at 535. The Chinese action is also still ongoing, as Naixing has petitioned the Supreme People's Court for review of the two rulings in Smoore's favor. NLV thus has no basis to claim that either prior action (and certainly not this one) has been "deprived of its legitimacy" as required to support the second exception to *Noerr-Pennington* immunity.

### 3. NLV Cannot Demonstrate a "Policy" or "Pattern" of Allegedly Baseless Suits.

The Federal Circuit has not recognized any additional exception to *Noerr-Pennington* immunity for a series of lawsuits. *See Aventis*, 2009 WL 8727693, at *7. But assuming a Ninth Circuit exception applies here, NLV's counterclaims cannot fit within it. NLV's attempt to allege a "pattern and practice . . . to assert patents that Smoore knew or should have known were invalid and unenforceable," AA&C ¶ 56, falls far short of adequately pleading a "series of lawsuits . . . brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose" under Ninth Circuit precedent. *Sosa*, 437 F.3d at 938.

21

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES No. 2:22-cv-07646-AB-AGR

NLV has alleged at most three proceedings: the ITC action, a Chinese court action to enforce a design patent (which Smoore won at the lower court and appellate levels), and this lawsuit covering a set of patents only partially overlapping with those at issue in the ITC action. The Ninth Circuit has held that a mere "handful of legal proceedings," like NLV alleges here, "does not amount to a 'pattern' of baseless claims" even if assuming that those prior claims are lacking in merit. *Kottle*, 146 F.3d at 1063; *see also Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA-CV-15246-JLS-DFMx, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) ("[Plaintiff's] three lawsuits and International Trade Commission activity do not constitute a 'series of lawsuits' within the meaning of the 'pattern exception.'").

## E. NLV Fails to Plausibly Allege a "Dangerous Probability" of Monopolization

A "dangerous probability of achieving monopoly power" is an essential element of any attempted monopolization claim. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 477, 456 (1993). Even assuming Smoore possesses the unsourced market shares alleged (it does not), NLV's allegation of a "dangerous probability" of monopolization is classic boilerplate and simply makes no sense. NLV's allegations are directly contradicted by its admissions that Smoore's market position and profits have precipitously **declined**. AA&C ¶¶ 31-35, 119. NLV admits that Smoore's "rapid decline in fortunes" started "around 2018 or 2019, [when] Smoore began losing market share to [NLV and other] upstart American competitors." *Id*. ¶¶ 36, 33-34. And "[e]ven as the market for cannabis vaporizers was growing, with sales as much as doubling between 2020 and 2022, Smoore's market share [quickly] began to erode." *Id*. ¶ 35. "Between 2018 and 2023, Smoore's market share" **dropped** by at least 20-30%. *Id*. Smoore's rapid decline, NLV alleges, is reflected in Smoore's publicly available annual reports. *Id*. ¶ 119 & nn.19-22. NLV argues that "[i]n 2022, Smoore's total revenue declined as its gross profit margin dropped sharply, [from 53.6%] to 43.4%. In 2023, Smoore issued a

22

1   warning to investors that net profit for the first 6 months of the year would be

2   starkly lower than the previous year as revenues had declined again." *Id*.

3          Indeed, NLV admitted—and now attempts to walk back—that Smoore's

4   hemorrhaging of business and profit margin has only ***accelerated*** in recent years,

5   well after any alleged "plan to suppress and eliminate competition" was launched.

6   ECF No. 36, ¶¶ 30-31 ("Most of this market share loss did not take place until

7   2022."). It is wholly implausible that this accelerating decline could suddenly

8   reverse course when assuming NLV's factual allegations are accurate—and yet that

9   is exactly what would be required to demonstrate a "dangerous probability" of

10  monopolization. *See Sidibe v. Sutter Health*, No. 12-cv-04854-LB, 2021 WL

11  879875, at *9 (N.D. Cal. Mar. 9, 2021) (granting summary judgment on lack of

12  dangerous probability of monopolization where evidence showed "either no increase

13  or falling market share"). And such a theory is contradicted by NLV's argument that

14  there are "serious weakness[es] with Smoore's products" and that "competing"

15  companies have successfully "take[n] advantage of Smoore's failure to keep up"

16  with better competing technology. AA&C ¶¶ 32-33. NLV thus cannot plausibly

17  allege a dangerous probability of monopolization and its attempted monopolization

18  claim should be dismissed.

19  **F. NLV's California Cartwright Act Claim Fails for the Same Reasons as**
       **its Sherman Act Claims.**
20

21         NLV's duplicative claim under the California Cartwright Act, based on

22  exactly the same allegations as its Sherman Act claims, should be dismissed for the

23  same reasons. *See Sabry Lee, Inc. v. Genera Corp.*, No. CV 08-5758-GW(PJWX),

24  2009 WL 10674318, at *5 (C.D. Cal. Feb. 12, 2009) ("The analysis under

25  California's Cartwright Act mirrors the analysis under federal law because the act

26  was modeled after the Sherman Act."). The protections of the First Amendment and

27  the *Noerr-Pennington* doctrine apply with equal force to state law claims, *see Rock*

28  *River Commc'ns, Inc. v. Universal Music Grp.*, No. CV-080635-CAS-AJWx, 2008

WL 11338096, at *4 (C.D. Cal. Aug. 25, 2008); and the same principles of antitrust standing and the requirement for antitrust injury also apply under California law, *see Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App. 4th 1224, 1234-35 (1993).

### G. NLV's Patent Counterclaim Should Be Dismissed.

NLV's inducement infringement claim should be dismissed because it fails to sufficiently plead Smoore's pre-suit knowledge of the '294 Patent. AA&C ¶ 167. Induced infringement requires knowledge of the patent and of patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). However, "knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *6 (C.D. Cal. May 16, 2012); *see also Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 645 (N.D. Cal. 2022) (finding "a mere allegation of 'knowledge' remains conclusory and insufficient" for induced infringement). The Court should disregard NLV's outlandish insinuation that a Smoore employee, whose title and job description are conveniently absent from NLV's amended counterclaims and who was employed by NLV for roughly a month, both knew about the '294 Patent and relayed that information to Smoore does not rise above "speculative," "conceivable," or "possible" as required by *Twombly* and *Iqbal*. AA&C ¶ 167. Therefore, at best, NLV only pleads that "Smoore has had **knowledge** of the '294 Patent at least **as of the filing of this counterclaim**." AA&C ¶ 167 (emphasis added). Because NLV fails to plead knowledge by Smoore with any particularity at the relevant time in a way that rises above "speculation," NLV's induced infringement claim should be dismissed.

### H. NLV's AFFIRMATIVE DEFENSES SHOULD BE STRICKEN OR DISMISSED

Rule 12(f) of the Federal Rules of Civil Procedure authorizes this Court to "strike from a pleading" any "insufficient defense." Fed. R. Civ. P. 12(f). "The

24

majority of district courts in [the ninth] Circuit, including the entire Northern District and this Court" apply the standard set in *Twombly* and *Iqbal* for pleadings to affirmative defenses. *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 440 (C.D. Cal. 2013). As such, parties are required to plead their affirmative defenses to the standard of *Twombly* and *Iqbal*, or they should be stricken.

**First Affirmative Defense.** Noninfringement is not an affirmative defense and should be stricken. *Roland Corp. v. Inmusicbrands, Inc.*, No. 2:16-cv-06256-DBM-AJWx, 2017 WL 513924, \*2-3 (C.D. Cal. Jan. 26, 2017).

**Second, Third, Fourth, Sixth, and Ninth Affirmative Defenses.** NLV and A&A fail to allege sufficient factual basis for these alleged affirmative defenses. Because they fail to meet the pleading standard of *Twombly* and *Iqbal*.

**Fifth and Seventh Affirmative Defenses.** The Federal Circuit has stated that "limitation[s] on damages, [are] not . . . affirmative defense[s]." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). As such, these defenses should be stricken.

**Eighth Affirmative Defense.** Contesting attorney's fees pursuant to 35 U.S.C. § 285 is not an affirmative defense. *Sloan Valve Co. v. Zurn Indus., Inc.*, 712 F. Supp. 2d 743, 756 (N.D. Ill. 2010), as corrected (May 6, 2010). As such, this defense should be stricken.

## IV.    CONCLUSION

For the reasons stated above, the Court should bifurcate all antitrust counterclaims and stay discovery on those counterclaims. In the alternative, NLV's antitrust and patent counterclaims should be dismissed and its affirmative defenses stricken. Because no amount of amending can overcome the repeated defects of NLV's pleading, the Court should dismiss the counterclaims with prejudice.

1    Dated:  October 22, 2024          Baker Botts L.L.P.

2

3                                       By:/s/  *Theodore W. Chandler*

4                                       Theodore W. Chandler (Bar No. 219456)
                                            ted.chandler@bakerbotts.com
                                        Bᴀᴋᴇʀ Bᴏᴛᴛs L.L.P.
5                                       1801 Century Park East, Suite 2400
                                        Los Angeles, California 90067
6                                       Telephone:      (213) 202-5702
                                        Facsimile:      (213) 202-5732
7
                                        Robert L. Maier (Pro Hac Vice)
8                                           robert.maier@bakerbotts.com
                                        Kiyotoki "Thomas" Natsume (Pro Hac
9                                       Vice)
                                            thomas.natsume@bakerbotts.com
10                                      BAKER BOTTS L.L.P.
                                        30 Rockefeller Plaza
11                                      New York, NY 10112
                                        Telephone:      (213) 202-5702
12                                      Facsimile:      (213) 202-5732

13                                      Chao "Wendy" Wang (Bar. No. 289325)
                                            wendy.wang@bakerbotts.com
14                                      BAKER BOTTS L.L.P.
                                        1001 Page Mill Rd, Bldg. One, Ste 200
15                                      Palo Alto, California 94303
                                        Telephone:      (650) 739-7514
16                                      Facsimile:      (650) 739-7614

17                                      Erik T. Koons (Pro Hac Vice)
                                            erik.koons@bakerbotts.com
18                                      Evan J. Werbel (Pro Hac Vice)
                                            evan.werbel@bakerbotts.com
19                                      Thomas E. Carter (Pro Hac Vice)
                                            tom.carter@bakerbotts.com
20                                      Kristin M. Barkemeyer (Pro Hac Vice)
                                            kristin.barkemeyer@bakerbotts.com
21                                      BAKER BOTTS L.L.P.
                                        700 K Street, N.W.
22                                      Washington, DC 20001
                                        Telephone:      (202) 639-7700
23                                      Facsimile:      (202) 639-7890

24
                                        *Attorneys for Plaintiff and Counterclaim-*
25                                      *Defendant Shenzhen Smoore Technology*
                                        *Co., Ltd.*
26

27

28

COUNTERCL.-DEF'S MOT. TO STAY AND BIFURCATE ANTITRUST
COUNTERCLS., OR DISMISS AM. COUNTERCLS. AND STRIKE DEFENSES
No. 2:22-cv-07646-AB-AGR